UNITED STATES of America, Appellee,

v.

Sammy L. GARRETT, Appellant.

No. 90–3210.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 25, 1991.

Decided March 17, 1992.

Samuel Edgar Wilhite, Washington, D.C. (appointed by the Court) for appellant.

Leslie Ann Wise, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Roy W. McLeese, III,

Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WALD, SILBERMAN, and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Sammy L. Garrett was convicted on one count of possession of cocaine base with intent to distribute and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).[1] Garrett challenges his convictions on the grounds that the trial court erred in (1) finding that the police had probable cause to search his car and (2) excluding evidence regarding the activities of a defense witness on the day Garrett was arrested. Garrett also challenges the legality of the career offender provision of the *United States Sentencing Guidelines* (Guidelines) as it was applied to him. We conclude that the trial court committed no error and that the application of the Guidelines withstands Garrett's attack. We therefore affirm the convictions.

## I

On January 30, 1990, at about 8:00 p.m., Metropolitan Police Officer Wayne T. Simpson set up an observation post in the area of Fifth Street and S Street, N.W., in Washington, D.C. Simpson had earlier received a citizen's complaint alleging that narcotics were being distributed in that neighborhood by someone driving a burgundy car with Maryland license plates "WJB–787." When Simpson arrived at 5th Street and S Street that evening, he saw a burgundy vehicle with Maryland license plates "WJB–787" parked at the northeast corner of the intersection. Simpson then saw Garrett and codefendant Randolph Campbell walk over to the burgundy car where Campbell passed paper currency to Garrett. Garrett opened the car door and

retrieved from inside a small object which he passed to Campbell. Aware that the area was a known "high narcotic area" and based on his experience and the citizen's tip, Simpson concluded that a narcotics transaction had just taken place. Simpson further observed that as Garrett and Campbell walked away from the car they were joined by a third man, Levander Johnson. At this point, Simpson directed scout officers to stop all three men. As the officers approached, Campbell dropped a pouch on the ground. Simpson testified that the pouch was the same size as the item Garrett passed to Campbell. The police recovered the pouch. It contained 20 packages of white powder which later tested positive for both heroin and cocaine. After they recovered the pouch, the police placed Campbell under arrest and detained Garrett and Johnson. Officer Gudger of the scout force then searched Garrett's car and discovered a black bag containing 13.26 grams of cocaine base and 26.41 grams of regular cocaine and a brown paper bag containing 6.3 grams of cocaine base. Garrett was placed under arrest and a search of his person produced $1067. Johnson was not arrested.

At the suppression hearing, Johnson testified that shortly before his encounter with the police he visited Virginia Brown's house to use her telephone. Her telephone was not working. When Johnson left Brown's house, he saw Garrett standing across the street. Knowing that Garrett had a portable telephone, Johnson asked to borrow it. Johnson claimed that he waited for Garrett near a parked pick-up truck and did not watch where Garrett went. He testified that it took Garrett three minutes to retrieve the phone and another three minutes to return it to his car after Johnson had finished using it. Johnson, who claimed not to know Campbell, further testified that five minutes after Garrett had returned the phone to his car, Campbell came around the corner and stood in front of them. According to Johnson, when he

---

[1]. Although the indictment also charged violations of subsections 841(b)(1)(B)(iii) and 841(b)(1)(C), we note that these subsections are penalty provisions and not components of any substantive offense. *See United States v. Patrick,* 959 F.2d 991, 995–96 n. 5 (D.C.Cir.1992).

and Garrett began to walk up the street, Campbell walked along with them. Johnson also testified that when the police arrived, they threw him face down on the hood of a car and kept him there for twenty-five minutes during which time they searched him.

The trial judge denied the defendants' motion to suppress, concluding that the police had reasonable suspicion to stop the three men. Their reasonable suspicion ripened into probable cause to arrest Campbell when the police discovered that the discarded pouch contained drugs. The trial judge further held that the police also had probable cause to search Garrett's car because it appeared that the drugs Garrett passed to Campbell had been removed from it.

Before trial, the government notified the court, in writing, that Garrett had two prior felony drug convictions. Garrett was eventually tried on an indictment charging him with one count of distribution of cocaine, one count of distribution of heroin, one count of possession of cocaine base with intent to distribute and one count of possession of cocaine with intent to distribute. A jury acquitted him on the two distribution counts but found him guilty on the two possession with intent to distribute counts. Garrett's motion for a new trial was denied on June 6, 1990. He was subsequently sentenced to two concurrent terms of 360 months each.

## II

■ Garrett argues that the trial court should have granted his motion to suppress because the police lacked probable cause to search his car. The existence of probable cause for a warrantless search is a mixed question of law and fact. *See Ker v. California*, 374 U.S. 23, 33–34, 83 S.Ct. 1623, 1629–30, 10 L.Ed.2d 726 (1963); *see also United States v. Alfonso*, 759 F.2d 728, 741 (9th Cir.1985). We review the trial court's findings of fact under a clearly erroneous standard and its legal conclusions *de novo*.

*See Pullman–Standard v. Swint*, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *Alfonso*, 759 F.2d at 741.

■ Our analysis of the trial court's probable cause determination begins with the initial encounter between the police and the three suspects. Under the Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer has the requisite reasonable suspicion to stop a suspect if he has observed conduct "which leads him reasonably to conclude in light of his experience that criminal activity may be afoot...." *Id.* at 30, 88 S.Ct. at 1884; *United States v. McKie*, 951 F.2d 399, 401–02 (D.C.Cir.1991). In view of Officer Simpson's nine years of experience in undercover narcotics investigations and in view of the facts that the officer observed the transaction in a "high narcotic area" and that the color and license plate number of Garrett's car matched those given in the citizen's complaint, Simpson could have easily developed a reasonable suspicion of criminal activity when he witnessed Garrett pass a small object retrieved from inside his car to Campbell in exchange for money. We conclude therefore that the initial contact between the scout officers and Garrett, Campbell and Johnson constituted a valid *Terry* stop.

■ When Campbell dropped the pouch, a pouch containing drugs and matching in size the object Simpson had seen Garrett removing from his car, and the officers opened it, probable cause arose to believe that the drugs in the pouch came from the car and that additional drugs might be found there.[2] *See United States v. Caroline*, 791 F.2d 197, 201 (D.C.Cir. 1986) ("Probable cause for a search exists where 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983))). Once the officers had probable cause to believe that more drugs would be found in Gar-

---

**2.** Garrett does not challenge the admissibility of the drugs found in the pouch. As the trial court correctly noted, he would not have standing to assert such a challenge. *See Rawlings v. Kentucky*, 448 U.S. 98, 104–05, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980).

rett's car, they could properly conduct a search of the entire car and any containers found therein.[3] *Id.* at 202, 103 S.Ct. at 2312 (citing *United States v. Ross*, 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982)). The trial court therefore properly denied Garrett's motion to suppress.

■ Garrett also claims that the trial judge improperly excluded evidence that would have bolstered Johnson's testimony that he made a telephone call from Garrett's portable phone. Specifically, Garrett objects to the trial judge's exclusion of Virginia Brown's testimony and his exclusion of certain telephone records, both of which, he contends, would have supported Johnson's claim. Questions regarding the relevance or materiality of evidence generally rest within the discretion of the trial court. *Hardy v. United States*, 335 F.2d 288, 289 (D.C.Cir.1964). Such rulings should not be disturbed except for grave abuse. *Id.* This is particularly true when the evidence is cumulative. *United States v. Thornton*, 746 F.2d 39, 49–50 (D.C.Cir. 1984) ("[Where] defense was allowed to adduce substantial evidence that appellant was a gambler . . . an in depth examination of the gambling investigation and of each piece of gambling material seized would have been redundant, time-consuming, and possibly confusing to the jury.").

At trial, the government did not contest the fact that Johnson used the portable telephone. Mrs. Brown's testimony and the telephone records would therefore have been cumulative. Under the circumstances, the trial court's exclusion of this evidence appears to have been proper and in any event does not amount to "grave abuse."

3. Garrett claims that the search was unconstitutional because the police went beyond permissible limits in executing the initial *Terry* stop. Specifically, he points to Johnson's claim that he was thrown against the hood of a car and searched. Assuming *arguendo* Johnson's testimony is accurate, it has no bearing on the legality of the search of Garrett's car. Garrett's car was searched after Campbell discarded the pouch and as a result of the discovery of the drugs in the pouch. The search in no way

## III

As we noted earlier, Garrett was convicted of one count of possession of cocaine base with intent to distribute and one count of possession of cocaine with intent to distribute. For possession of more than five grams of cocaine base with intent to distribute, subsection 841(b)(1)(B)(iii) mandates a sentence ranging from five to forty years of imprisonment. For possession of cocaine with intent to distribute, subsection 841(b)(1)(C) requires a sentence of not more than twenty years' imprisonment. Both statutory provisions also contain a sentence enhancement for defendants with one or more prior drug convictions. For them, the sentencing range under subsection (b)(1)(B) is ten years to life and under subsection (b)(1)(C) the sentence cannot exceed thirty years. *Id.*

Determining the statutory punishment does not end the sentencing inquiry, however, because the punishment provided by statute must now be imposed in accordance with the Guidelines. The base offense level for a defendant convicted of possession with intent to distribute illegal drugs is calculated under section 2D1.1 of the Guidelines. In order to aggregate properly the sentences of a defendant convicted of possessing more than one type of drug, the Guidelines include "drug equivalency tables" which allow a court to convert the different drugs to the equivalent amount of a single measuring drug (e.g., heroin). *See* U.S.S.G. § 2D1.1. The defendant is then sentenced according to the total amount of the measuring drug. *Id.* The tables prescribe that one gram of cocaine base is equivalent to one hundred grams of regular cocaine. *Id.* Based on his possession of 26.41 grams of cocaine and 19.56 grams of cocaine base, therefore, Garrett's base offense level would be 26.[4] *Id.* Under

hinged on the police officers' initial treatment of Johnson.

4. The 19.56 grams of cocaine base and 26.41 grams of cocaine found in Garrett's car are equivalent to 396.482 grams of heroin according to the drug equivalency tables. U.S.S.G. § 2D1.1. Under the Guidelines, a defendant convicted of possession with intent to distribute between 100 and 400 grams of heroin receives a base offense level of 26. *Id.* § 2D1.1(c)(9). The

section 4A1.1 of the Guidelines, Garrett would have a criminal history category of V. The sentencing range for a defendant with a base offense level of 26 and a criminal history category of V is 110 to 137 months' imprisonment.

Garrett was sentenced, however, under the Guidelines' career offender provision. U.S.S.G. § 4B1.1. According to this provision, a defendant who is at least eighteen years old at the time of the offense, is convicted of a felony that is either a crime of violence or a controlled substance offense and who has at least two prior felony convictions of either a crime of violence or a controlled substance offense is defined as a career offender. *Id.* The base offense level for a career offender is determined with reference to the "Offense Statutory Maximum," which is defined in the Guidelines as "the maximum term of imprisonment authorized for the offense of conviction". *Id.* Where more than one count of conviction is based on a controlled substance offense, the offense that carries the greatest maximum term of imprisonment controls. *Id.* commentary, application note 2. The career offender provision also mandates that all career offenders be assigned a criminal history category of VI. *Id.* § 4B1.1.

In applying the career offender provision, the district court looked to subsection 841(b)(1)(B)(iii) to determine the Offense Statutory Maximum because possession with intent to distribute more than five grams of cocaine base (punishable under subsection 841(b)(1)(B)(iii)) carries a greater maximum term of imprisonment than possession with intent to distribute cocaine (punishable under subsection 841(b)(1)(C)). In determining the Offense Statutory Maximum under subsection 841(b)(1)(B)(iii), the district court considered Garrett's two prior felony drug convictions and concluded that life imprisonment was the maximum term. The trial judge then assigned Garrett a base offense level of 37, *see U.S.S.G.* § 4B1.1, and sentenced him to a term of

imprisonment of 360 months on each count, to be served concurrently. Garrett objects to this calculation on several grounds.

■ He first contends that his thirty year sentence constitutes cruel and unusual punishment under the eighth amendment. Keeping in mind that the Supreme Court has held that a forty year sentence for possession with intent to distribute nine ounces of marijuana does not violate the eighth amendment, *see Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982), we conclude that this claim lacks merit. *See also Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (upholding constitutionality of mandatory life imprisonment without possibility of parole for possession of more than 650 grams of cocaine).

■ Garrett next asserts that using his earlier drug convictions to determine his current sentence subjects him to double jeopardy. The Supreme Court has held otherwise. In *Gryger v. Burke,* 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948), the Court held: "The sentence as a ... habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Id.* at 732, 68 S.Ct. at 1258; *see also Oyler v. Boles,* 368 U.S. 448, 451, 82 S.Ct. 501, 503, 7 L.Ed.2d 446 (1962) ("[T]he practice of inflicting severer criminal penalties upon habitual offenders is no longer open to serious challenge....").

■ Finally, Garrett claims that his earlier drug convictions were improperly used to calculate both his sentence under 21 U.S.C. § 841(b)(1)(B)(iii) and his base offense level and criminal history category under the Guidelines. Garrett asserts that under the career offender provision, "the maximum term of imprisonment authorized for the offense of conviction" should be the maximum applied to a defendant with no

---

probation officer who prepared Garrett's presentence report, however, included the drugs found in Campbell's pouch in determining Garrett's base offense level. The additional 3.131

grams of heroin would not have had any effect on Garrett's base offense level because the aggregate equivalent amount of heroin would remain between 100 and 400 grams. *Id.*

prior convictions, here, forty years. In this way, his prior convictions would be considered only once in determining his sentence, that is, by considering him a career offender under the Guidelines but not using the *increased* statutory maximum for a repeat offender. According to Garrett's calculation, the district court would have assigned him a base offense level of 34 and a corresponding sentence of between 262 and 327 months. *See* U.S.S.G. § 4B1.1; Appellant's Brief at 20. Otherwise, Garrett argues, he is subjected to unauthorized multiple counting of his prior convictions. Appellant's Brief at 20.

At least two other circuits have rejected this argument. *See United States v. Amis*, 926 F.2d 328 (3d Cir.1991); *United States v. Sanchez–Lopez*, 879 F.2d 541 (9th Cir.1989). In *United States v. Sanchez–Lopez*, the Ninth Circuit held that application of the career offender provision to the increased statutory maximum for a defendant with prior drug convictions under subsection 841(b)(1)(B) does not result in multiple enhancement of his sentence. Concluding that the "Sentencing Guidelines are intended to provide a narrow sentence range within the range authorized by the statute for the offense of conviction ...," *Id.* at 559 (citations omitted), and emphasizing that Congress "made it very clear that the Sentencing Commission should ensure that [repeat drug offenders] should receive a sentence of imprisonment under the guidelines that is at or near the maximum term authorized by statute," *id.* (citing 28 U.S.C. § 994(h)), the court decided that the career offender provision does not result in multiple enhancement. Instead it simply "produce[s] a sentence within the range authorized by statute for one criminal activity." *Id.* at 560; *see also Amis*, 926 F.2d at 330.

We agree with the holdings in *Sanchez–Lopez* and *Amis*. We specifically reject Garrett's contention that the relevant maximum statutory sentence should be the maximum for a defendant with no prior drug convictions. *Accord Amis*, 926 F.2d at

329–30; *cf. Sanchez–Lopez*, 879 F.2d at 559. Subsection 841(b)(1)(B)(iii) contains different maximum terms for first offenders, for first offenders whose offense causes death or bodily injury, for repeat offenders and for repeat offenders whose offense causes death or bodily injury. To conclude that Congress, in approving the Guidelines, intended to erase the statutory distinctions among offenders based either on their past actions or on the circumstances of the offense, distinctions carefully set forth in subsection 841(b)(1)(B), would be senseless. On the contrary, under the career offender provision, Congress simply refined further the statutory sentence range so that the sentencing judge must impose a term of imprisonment nearer to the statutory maximum for a drug recidivist. The career offender provision merely narrows the trial judge's discretion in accordance with the Guidelines' overall goal of "promoting sentencing within a narrower range than was previously applied." *Mistretta v. United States*, 488 U.S. 361, 395, 109 S.Ct. 647, 666, 102 L.Ed.2d 714 (1989). We note that Congress, fully aware that subsection 841(b)(1)(B) contained a tiered punishment scheme, approved the Guidelines after it enacted that subsection. There is no indication in the career offender provision that a statute containing a tiered punishment scheme is to be treated as in any way different from a statute prescribing a single punishment. Because the Offense Statutory Maximum for a statute prescribing a single punishment is interpreted as the maximum authorized term under the statute, and the maximum authorized term under a statute prescribing tiered punishments is that prescribed by the highest applicable tier, the Guidelines require us to define the Offense Statutory Maximum in this case as the maximum authorized term under the highest applicable tier of subsection 841(b)(1)(B)(iii). Accordingly, if we refused to uphold the application of the career offender provision to Garrett, we would thwart congressional intent.[5] *See*

---

**5.** Garrett also challenges the validity of the Guidelines' drug equivalency tables. *See*

U.S.S.G. § 2D1.1 commentary, application note 10. Specifically, he objects to the conversion

*Sanchez–Lopez,* 879 F.2d at 559. Application of the Guidelines' career offender provision to the statutorily heightened maximum sentence for Garrett does not add to the penalty authorized by Congress because it does not increase Garrett's sentence beyond the maximum authorized by subsection 841(b)(1)(B). We therefore conclude that the district court properly calculated Garrett's sentence.

For the reasons set forth above, the judgment and sentence of the trial court are

*Affirmed.*

ratio between cocaine base and regular cocaine. Because we hold that Garrett was properly sentenced under the Guidelines' career offender provision based solely on his possession with intent to distribute cocaine base, we need not address the validity of the drug equivalency tables. We do note, however, that the Eighth Circuit has upheld the ratio. *United States v. Buckner,* 894 F.2d 975, 978–79 n. 9 (8th Cir. 1990); *cf. United States v. Cyrus,* 890 F.2d 1245, 1248 (D.C.Cir.1989) (holding differential treatment of cocaine base and regular cocaine does not violate equal protection principles and does not result in cruel and unusual punishment).