**UNITED STATES of America,**

v.

**George R. LABONTE, Defendant.**

**Crim. No. 92–69–P–H.**

United States District Court,
D. Maine.

May 5, 1995.

**20**

Margaret D. McGaughey, Asst. U.S. Atty., Portland, ME, for the Government.

John A. Ciraldo, Perkins Thompson Hinckley & Keddy, Portland, ME, for defendant.

## ORDER

HORNBY, District Judge.

This case involves a challenge to the legality of United States Sentencing Commission commentary to its sentencing guidelines. The Department of Justice, through the United States Attorney's office, maintains that the Commission has exceeded its powers. It therefore lies to court-appointed counsel for the defendant to seek to uphold the Commission's actions. Although I have the greatest respect for the professional competence and preparation of both lawyers, I believe that this is one instance where the adversary system has not adequately developed the legal issues. The Sentencing Commission—unrepresented here in court—is an independent commission within the judicial branch. 28 U.S.C. § 991(a); *Mistretta v. United States*, 488 U.S. 361, 361, 109 S.Ct. 647, 649, 102 L.Ed.2d 714 (1989). The United States Attorney's Office, on the other hand, is the prosecutorial arm of the executive branch. I am not satisfied that the prosecution lawyer, naturally seeking to up-

hold the sentence previously imposed, has fully explored with Commissioners and staff the full rationale and support for their commentary. The lawyer for the defendant, although forcefully advancing the merits of his client's case, is obviously not in a position to approach Commission headquarters and collect this information. Thus, this is one of those rare cases that cries out for a brief, independent of the Department of Justice, advancing the Commission's position. The Court of Appeals may wish to solicit an amicus brief or its equivalent, independently advancing the Commission's view, *see* 28 U.S.C. § 995(a)(23), before the Court of Appeals reaches a final decision.

In the meantime, however, I must rule. The United States Supreme Court has instructed us that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993); *see United States v. Piper*, 35 F.3d 611, 617 (1st Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1118, 130 L.Ed.2d 1082 (1995). I conclude that, although the case is not without difficulty, the commentary under attack is not plainly erroneous or inconsistent with the guidelines, nor does it violate the Constitution or federal statutes. I therefore follow the commentary.

## BACKGROUND

Applying Sentencing Commission Guidelines and Commentary as then in effect, I sentenced George Raymond LaBonte on June 24, 1993, to 188 months in prison, the minimum of the guideline range for "career offenders." United States Sentencing Commission, *Guidelines Manual*, § 4B1.1 (Nov. 1993). LaBonte was a "career offender" under section 4B1.1 because he had two previous felony drug offenses in addition to the drug offense for which I was sentencing him. Under the career offender guideline, the guideline range depends upon the "Offense Statutory Maximum." *Id.* Under the com-

mentary applicable to section 4B1.1 when I sentenced LaBonte, I determined the Offense Statutory Maximum (and thus the guideline range) not by looking simply at the maximum penalty for the offense he committed, but by increasing it for LaBonte's previous drug convictions in accordance with 21 U.S.C. § 841(b).

As of November 1, 1994, however, the Commission revised[1] its position and changed the commentary to Guideline 4B1.1 to state clearly that in calculating a guideline sentence for a career offender, a court should consider only the statutory maximum penalty for the offense, *without* adding the statutory enhancement for past criminal history. USSG § 4B1.1, comment. (n. 2). It also made the change retroactive and therefore applicable to LaBonte. USSG § 1B1.10(c). The new interpretation lowers LaBonte's guideline range to 151 to 188 months. Although a sentencing court has the discretion whether to resentence under these circumstances, this is a case where—unlike *United States v. Piper*, No. 93–49–P–H (D.Me. Feb. 23, 1994) (declining to reduce the sentence),—I would clearly reduce the sentence to the minimum of the new sentencing range if that is within my power, and sentence LaBonte to 151 months for the reasons I set forth in sentencing him initially at the bottom of the previous guideline range.

### LAW

The portion of the guideline enabling statute that provokes this controversy states that in a felony drug conviction:

> The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants [who are at least 18 years old and have previously been convicted of two or

more violent felonies or felony drug offenses].

28 U.S.C. § 994(h). The Commission has tried to implement this provision through section 4B1.1 for career offenders. For defendants who meet the criteria of section 994(h), the Commission has created a table that assigns a particular offense level to various "Offense Statutory Maximums," a term coined by the Commission. USSG § 4B1.1. Initially, the Commission defined this phrase in the commentary, application note 2, as "the maximum term of imprisonment authorized for the offense of conviction." *Id.* at comment. (n. 2.) (Nov. 1993). Courts interpreted this to mean the maximum penalty as enlarged by any enhancements available for certain defendants—such as the increased penalties the drug sentencing statute provides if the defendant has one or more qualifying prior drug convictions. 21 U.S.C. § 841(b). *See, e.g., United States v. Smith*, 984 F.2d 1084, 1086–87 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 204, 126 L.Ed.2d 161 (1993); *United States v. Garrett*, 959 F.2d 1005, 1009–11 (D.C.Cir.1992); *United States v. Amis*, 926 F.2d 328, 329–30 (3d Cir.1991); *United States v. Sanchez–Lopez*, 879 F.2d 541, 558–60 (9th Cir.1989).

In adopting its 1994 interpretation, the Commission amended the definition of its phrase "Offense Statutory Maximum," by specifically excluding "any increase in [the] maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record...." USSG § 4B1.1, comment. (n. 2). The Commission reasoned:

> This rule avoids unwarranted double counting as well as unwarranted disparity associated with variations in the exercise of prosecutorial discretion in seeking enhanced penalties based on prior convictions.

---

1. I say "revised" because that is the popular perception. Actually, the pre-amendment application note stated only that " 'Offense Statutory Maximum' refers to the maximum term of imprisonment authorized for the offense of conviction." USSG § 4B1.1, comment. (n. 2). The courts consistently interpreted this to mean the maximum *after* enhancements. *See, e.g., United States v. Smith*, 984 F.2d 1084, 1086–87 (10th

Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 204, 126 L.Ed.2d 161 (1993); *United States v. Garrett*, 959 F.2d 1005, 1009–11 (D.C.Cir.1992); *United States v. Amis*, 926 F.2d 328, 329–30 (3d Cir. 1991); *United States v. Sanchez–Lopez*, 879 F.2d 541, 558–60 (9th Cir.1989). But whether the amendment is to a prior Commission position or to judicial interpretation of the Commission's position makes no difference to the analysis.

Amendment 506, U.S.S.G.App. C, at 409 (Nov. 1994).

The Government, seeking to uphold the previously harsher sentences, argues that the revised commentary is invalid because it "expressly disregards the enhanced penalty that 21 U.S.C. § 841(b)(1)(C) provides for second-time drug offenders and is inconsistent with congressional intent as expressed in 28 U.S.C. § 994(h)." Government Objection to Mot. for Reduction of Sentence at 9–10. The Government focuses on the fact that the new commentary reduces the sentences some repeat drug offenders will serve and finds this result contrary to Congress's desire for sentencing "at or near the maximum."

There are two significant difficulties with the Government's approach. First, it assesses the legitimacy of a revision only by comparing it to the previous position, rather than evaluating the overall guideline structure as amended. By focusing exclusively on Congress's desire for maximum punishments and the previous interpretation that required harsher sentences, the argument seems to imply that any Commission change that might result in lighter punishment in this area is perforce illegal. Second, it looks at only one of the mandates assigned to the Commission—that of harsh punishment—and totally ignores others, such as the directive to reduce sentencing disparity.[2] I will elaborate on the second difficulty.

If the sole measure of the guidelines is how well they carry out a congressional mandate to be severe, then the career offender guideline fails the test even without the recent revision to commentary. The sentences resulting from the table in section 4B1.1, after allowing for reduction for acceptance of responsibility, generally achieve only 63% to 78% of the enhanced penalty.[3] Thus, under the Government's argument that in 28 U.S.C. § 994(h) Congress intended the Commission

to ensure sentences literally "at or near" the maximum of the enhanced penalty, the Guidelines are defective, regardless of the new commentary. But harshness, of course, is *not* the sole measure of the guidelines. Congress has also charged the Commission to establish policies "avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct." 28 U.S.C. § 991(b)(1)(B). Indeed, Congress has emphasized its directive to avoid disparities, calling for "particular attention to the requirements of subsection 991(b)(1)(B) for providing certainty and fairness in sentencing and reducing unwarranted sentence disparities." 28 U.S.C. § 994(f). In adopting its 1994 interpretation of section 4B1.1, the Commission specifically noted that United States Attorney charging practices had created unwarranted sentencing disparities in the application of the career offender guidelines and advanced the interpretation as a means to end those disparities. *See* Amendment 506, U.S.S.G.App. C, at 408–09 (Nov. 1994). According to the Commission's authorizing statute, that is a legitimate and important objective. *See* 28 U.S.C. §§ 991(b)(1)(B), 994(f). Yet the case as currently presented to me does not explore the seriousness of those disparities (although every sitting sentencing judge is aware that they exist) or the extent to which the directive to avoid such disparities provides support for the Commission's interpretation.

There is an alternative to the Government's reading of section 994(h) that interprets the section within the context of the entire guidelines statute and sentencing structure. First, it is important to observe that section 994(h) places responsibility for its implementation *with the Commission* and there was a reason for doing so. Originally, Senator Kennedy had sponsored legislation

---

**2.** The Commission is also charged in constructing its guidelines to minimize the likelihood of the federal prison population exceeding prison capacity and to take criminal history into account in sentences "only to the extent [it has] relevance" to the sentencing policies. 28 U.S.C. §§ 994(g), (d)(10). Moreover, Congress specifically directed the Commission to "periodically ... review and revise [its guidelines], in consid-

eration of comments and data coming to its attention." 28 U.S.C. § 994(*o*).

**3.** For 25–year sentences, for example, the offense level is 34. Acceptance of responsibility, USSG § 3E1.1, could reduce that to 31 and with the automatic criminal history category of VI, yield a guideline range of 188 to 235 months compared to the statutory maximum of 300 months.

that would have mandated the *sentencing judge* to impose a sentence at or near the statutory maximum. 128 Cong.Rec. 26,511–12, 26,515, 26,517–18 (1982). The Senate Committee on the Judiciary replaced this proposal with section 994(h), believing "that such a directive to the Sentencing Commission will be more effective; the guidelines development process can assure consistent and rational implementation of the Committee's view that substantial prison terms should be imposed on repeat violent offenders and repeat drug traffickers." S.Rep. No. 225, 98th Cong., 1st Sess. 175 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3358. Thus, the goal of section 994(h) was for the Commission to achieve a "*consistent* and *rational* implementation*" and to impose "*substantial prison terms*." *Id.* (emphasis supplied).

Second, the Government argues that the congressional directive to the Commission to "assure" certain sentences at or near the maximum must mean at or near the maximum of *enhanced* sentences. But in actuality that is a goal wholly beyond the Commission's powers. The availability of enhanced sentences lies exclusively within the prosecution's domain; no sentence enhancement is even available unless the United States Attorney chooses to file, before the defendant's

trial or guilty plea, an information listing the previous convictions. 21 U.S.C. § 851(a)(1). The Probation Office can gather and report to the sentencing judge as many previous convictions as it wishes in the Presentence Report, but none of them will enhance the statutory maximum unless the Government has filed the information before the trial or guilty plea. It is obviously the variations in prosecution practice on this subject—whether from variation in diligence, plea bargaining procedure, or other causes—to which the Commission referred when it spoke of "unwarranted disparity." The Commission can only "assure" sentences at or near the maximum penalty for the *offense as committed*, without enhancements.

Thus, to make sense of Congress's mandate, the Commission seems correct in redirecting the focus to the penalty for the offense of conviction without enhancement. The Commission *can* develop guideline policies to assure sentences at or near *that* maximum. Likewise, reflecting the legislative history in the Senate Judiciary Committee Report, it can then assure a "consistent and rational" approach, something it cannot do as long as the sentences are measured by enhancements that remain within the uncontrolled discretion of the prosecutor.[4]

4. On the other hand, I am not persuaded by the Commission's suggestion that the new rule "avoids unwarranted double counting" because the guideline as previously interpreted did not result in "unwarranted double counting." The so-called double counting could come from two possible circumstances: first, the increase statutorily recognized in 21 U.S.C. § 841(b)(1) coupled with the 28 U.S.C. § 994(h) instruction to sentence at or near the maximum; or alternatively the assignment of Criminal History Category VI because a defendant is a career offender with a particular criminal history and, on top of that, a total offense level adjusted upward because of the enhanced statutory penalty. Neither of these is unwarranted double counting, however. The first is simply Congress's direction of what sentences it wants. If the Government's argument concerning Congress's intent in 28 U.S.C. § 994(h) is correct and if it overwhelms all other directives to the Commission, then there is no double counting as such. Likewise, there is no double counting in the automatic assignment of the highest criminal history category and an increase for the total offense level, because the whole exercise is simply designed to yield, by formula, a sentence that will be at or near the maximum of something, and the only question is what that "something" should be.

In making its revision, the Commission also observed:

It is noted that when the instruction to the Commission that underlies § 4B1.1 (28 U.S.C. § 994(h)) was enacted by the Congress in 1984, the enhanced maximum sentences provided for recidivist drug offenders (*e.g.,* under 21 U.S.C. § 841) did not exist. Amendment 506, U.S.S.G.App. C, at 409 (Nov. 1994). This statement is clearly wrong. Enhancements already existed under the drug statutes for repeat offenders. The exact amounts of the enhancements may have changed, but the concept was well in place when section 994(h) was enacted, and had been since at least 1970. *See* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, 1970 U.S.C.C.A.N. (84 Stat.) 1437, 1466–68.

Are these two errors enough to invalidate the revised commentary? I think not, albeit with some reservations. The revision can stand for two reasons: on the other basis enunciated by the Commission and because it is more consistent with the overall guideline sentencing structure. The incorrect reference seems to be only a (misdirected) observation in passing. It seems inappropriate, if not unfair, to deny the benefit of

Finally, this reading also permits the Commission to consider the other objectives the sentencing statute charges it with—reducing sentencing disparity, minimizing excess prison populations, avoiding excessive weight on criminal history—rather than having to treat one factor, substantial punishment, as the only matter of concern.

It is true that several courts adopted the earlier interpretation. *See, e.g., United States v. Smith*, 984 F.2d 1084, 1086–87 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 204, 126 L.Ed.2d 161 (1993); *United States v. Garrett*, 959 F.2d 1005, 1009–11 (D.C.Cir. 1992); *United States v. Amis*, 926 F.2d 328, 329–30 (3d Cir.1991); *United States v. Sanchez–Lopez*, 879 F.2d 541, 558–60 (9th Cir. 1989). *Stinson* teaches us, however, that "prior judicial constructions of a particular guideline cannot prevent the Sentencing Commission from adopting a conflicting interpretation," —— U.S. at ——, 113 S.Ct. at 1914,—this in ruling upon an earlier Commission amendment of the commentary to the same career offender guideline. The United States Supreme Court has specifically approved commentary amendment as an appropriate way for the Commission to revise the guidelines "if the guideline which the commentary interprets will bear the construction." [5] On the arguments presented to date, I conclude that section 4B1.1's "Offense Statutory Maximum" terminology will bear the Commission's new definition and, for the reasons I have discussed, it seems to be one reasonable way for the Commission to carry out divergent congressional directives.

the revision to defendants merely because of careless research by Commission staff.

These two errors make me characterize this case as "not without difficulty." Nevertheless, I believe the text and legislative history of section 994(h) along with the other goals the Commission is directed to pursue in section 994 are sufficient to support the 1994 commentary against the Government's attack.

After drafting this opinion, I learned that the Commission on May 1, 1995, has submitted to Congress a new amendment to the section 4B1.1 commentary. The amended commentary maintains the same position substantively, but explains the Commission's rationale as follows: more precise focus on the class of recidivists for whom lengthy imprisonment is appropriate; avoidance of "unwarranted sentencing disparities"; and "consistent and rational implementa-

Accordingly, I follow the revised commentary and reduce LaBonte's sentence to 151 months.

So ORDERED.

tion" of both the overall guidelines scheme and the specific directive to assure substantial prison terms for repeat drug and violent offenders. Amendment Notice, 60 Fed.Reg. 14,054 (1995).

By placing this explanation in the commentary to section 4B1.1, the Commission apparently has abandoned the faulty rationales it provided in the text of Amendment 506, which I have criticized above. *See* Amendment 506, U.S.S.G.App. C, at 409 (Nov.1994).

5. *Id.* at ——, 113 S.Ct. at 1919. "Amended commentary is binding on the federal courts even though it is not reviewed by Congress." *Id.* Interestingly, the commentary amendment in this case was actually submitted to Congress, *see* 50 Fed.Reg. 23,608 (1994), although I draw no inference from Congress's failure to take action on it.