**UNITED STATES of America**

v.

**Chevalier THOMPSON, a/k/a Bumpy, Defendant.**

**Criminal No. 92–26–01 (RCL).**

United States District Court,
District of Columbia.

Feb. 23, 1996.

W.M. Sullivan, Assistant U.S. Attorney, Washington, DC, for Plaintiff.

Alan Bayles, Washington, DC, for Defendant.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on remand from the Court of Appeals. Defendant was convicted of one count of distribution of cocaine base and one count of possession with intent to distribute cocaine base. Because defendant had two prior felony convictions, defendant qualified as a career offender under the United States Sentencing Guidelines ("Guidelines") and, consequently, faced a maximum term of life imprisonment. Defendant claimed that he first became aware that he "qualified" as a career offender at the sentencing hearing. Defendant further represented that had counsel made him aware that he would be subject to enhanced punishment because of his career offender status, he would have entered a guilty plea early on in the prosecution to avoid triggering the career criminal penalties. Defendant therefore requested a three point reduction in his offense level under United States Sentencing Guidelines § 3E1.1(b)(2) ("U.S.S.G. § 3E1.1(b)(2)") for this "hypothetical" acceptance of responsibility.

The trial court agreed that trial counsel's failure to inform defendant of his career offender status and the possibility of the application of penalty enhancement provisions constituted constitutionally ineffective assistance of counsel. However, the court observed that the only prejudice suffered by defendant was that he lost the ability to plead to the indictment, which, had he done so, would have qualified for a two point reduction for acceptance of responsibility. The court rejected defendant's argument that he was entitled to third point reduction under U.S.S.G. § 3E1.1(b)(2) based on his own representation that he would have entered his plea well in advance of trial had he known the consequences of his career offender status. The court therefore granted defendant a two point reduction of his offense level for the "hypothetical" acceptance of responsibility, and sentenced defendant to 360 months on each count, with the sentences to run concurrently. *See* Court's Order of May 20, 1993.

Defendant appealed his conviction, claiming a variety of errors in the court's disposition of his sentencing. The Court of Appeals affirmed this court's reasoning in nearly all respects, but disagreed with this court's resolution of the issue whether defendant was entitled to a third point reduction under U.S.S.G. § 3E1.1(b)(2). The Court of Appeals therefore remanded the case for the purpose of determining the "probability that [defendant], if properly advised, would have secured the third point under U.S.S.G. § 3E1.1(b)(2).

On remand, defendant now argues not only that this court should award the third point reduction pursuant to U.S.S.G. § 3E1.1(b)(2), but also that this court should further reduce defendant's offense level pursuant to then newly promulgated commentary to U.S.S.G. § 4B1.1 n. 2 ("U.S.S.G. Amendment 506") and U.S.S.G. § 5K2.0. U.S.S.G. Amendment 506 revises the calculation of the offense level for career offenders under U.S.S.G. § 4B1.1 so that penalty enhancement provisions based on prior criminal history are not taken into account when determining a defendant's offense level. Under this revised calculus, defendant argues that his offense level should be further reduced. Additionally, defendant requests a downward departure under U.S.S.G. § 5K2.0 based on his efforts to improve his life over the past four years of his incarceration.

Upon consideration of the filings and arguments of counsel and the relevant authorities, the court shall grant defendant's motion for a third point reduction under § 3E1.1(b)(2). However, the court finds U.S.S.G. Amendment 506 to be inconsistent with the Congressional mandate in 28 U.S.C. § 994(h) and therefore invalid as a matter of law. Accordingly, defendant's motion requesting a downwards resentence and revision of offense level computation pursuant to U.S.S.G. Amendment 506 shall be denied. Defendant's request for downward departure under U.S.S.G. § 5K2.0 shall also be denied. The court's reasoning is set forth below.

## DISCUSSION

### A. Third Point Reduction under U.S.S.G. § 3E1.1(b)(2)

■ U.S.S.G. § 3E1.1(b)(2) allows a three point reduction for acceptance of responsibility for defendants whose offense level is Level 16 or above. Defendant argues that he is entitled to the full benefit of U.S.S.G. § 3E1.1(b)(2) because he would have "done or accepted anything" to avoid career criminal penalties—including the possibility of entering an early plea—had trial counsel made him aware of his career offender status. Def's Mot.Down.Dep., at 8. At the time of defendant's sentencing, this court agreed that trial counsel had rendered constitutionally ineffective assistance of counsel by failing to advise defendant of the applicability of the career offender provisions. However, the court determined that defendant was entitled only to a two point reduction because, in light of his alibi defense and his aggressive pursuit of a suppression motion, defendant was unlikely to have pled early enough in the course of his prosecution to qualify for the third point reduction. See Tr. IX, at 12–14.

The Court of Appeals, however, disagreed with this line of reasoning. According to the Court of Appeals, defendant's alibi defense and suppression motion should have no bearing on the court's determination of when defendant would have *hypothetically* entered a guilty plea. *United States v. Chevalier Thompson*, 27 F.3d 671, 677 (D.C.Cir.1994). As the Court stated in its opinion, "the choices [defendant] *actually made* do not necessarily shed any useful light on the choices he *would have made* if he had been properly advised." *Id.*

By excluding from consideration defendant's alibi defense and defendant's vigorous pursuit of the suppression motion, the Court of Appeals generates an aggressively pro-defendant hypothetical in which the only conduct that is considered relevant is defendant's own ruminations as to what his conduct might have been if he had it all to do over again. Because the Court of Appeals grants the defendant both the benefit of hindsight and unmitigated possibility, this court has no alternative but to accept defendant's assertion that he would have entered an early guilty plea as a genuine possibility—however removed from the facts of this case. Accordingly, the court shall grant defendant's request for a third point reduction under U.S.S.G. § 3E1.1(b)(2).

### B. Offense Level Recalculation Pursuant to U.S.S.G. Amendment 506

■ U.S.S.G. Amendment 506 represents one of the more recent efforts by the United States Sentencing Commission ("Commission") to carry out the duties assigned to it by Congress and enumerated in 18 U.S.C. § 994. Specifically at issue in this case is subsection (h), which provides in relevant part:

> The Commission shall assure that the guidelines specify a sentence to a term of imprisonment *at or near the maximum term authorized.*

18 U.S.C. § 994(h) (emphasis added). The Commission first implemented § 994(h) through the Career Offender Guideline, U.S.S.G. § 4B1.1. In U.S.S.G. § 4B1.1, the Commission made use of the term "offense statutory maximum," which referred to the maximum term of imprisonment authorized "for the offense of conviction." *Id.* The Commission intended the term "offense statutory maximum" to be the equivalent of the phrase "maximum term authorized" found in 28 U.S.C. § 994(h). *See* U.S.S.G. § 4B1.1, comment. (n. 2) (Nov.1993). Courts have generally interpreted the phrase "offense statutory maximum" to mean either the statutory maximum applicable to the offense of conviction simpliciter or the enhanced statutory maximum that results after any applicable penalty enhancement provisions are taken into account. *See United States v. Smith*, 984 F.2d 1084, 1086–87 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 204, 126 L.Ed.2d 161 (1993); *United States v. Garrett*, 959 F.2d 1005, 1009–11 (D.C.Cir.1992); *United States v. Amis*, 926 F.2d 328, 329–30 (3d Cir.1991); *United States v. Sanchez–Lopez*, 879 F.2d 541, 558–60 (9th Cir.1989).

The Commission subsequently adopted U.S.S.G. Amendment 506 to amend its earlier interpretation of Congress' sentencing man-

date in U.S.S.G. § 4B1.1.[1] In Amendment 506, the term "offense statutory maximum" is redefined to mean the statutory maximum prior to any enhancement based on prior criminal record. U.S.S.G. Amendment 506 provides:

> "Offense Statutory Maximum," for purposes of this guideline, refers to the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense, *not including any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record* (such sentencing enhancement provisions in 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), (b)(1)(C), and (b)(1)(D).... This amendment defines the term offense statutory maximum to mean *the statutory maximum prior to any enhancement based on prior criminal record.*

*Id.* (emphasis added).

Defendant argues that Amendment 506 is valid and binding on this court and, accordingly, requests a downward resentence based on the revised calculations set forth in Amendment 506. Under the unamended guideline, the enhanced penalty provisions are taken into account when calculating defendant's offense level. In defendant's case, the maximum term of imprisonment authorized by statute is a term of life imprisonment. Under the unamended guideline, defendant's offense level is calculated at Level 37. Taking into account the two point reduction already granted by the court along with the one point reduction which the court now grants to defendant, defendant's offense level falls to Level 34.

Applying the new guideline as modified by U.S.S.G. Amendment 506, defendant maintains that the statutory maximum prior to enhancement for prior criminal history is 40 years—not "life" as previously calculated under the old provisions. Using the 40 year maximum, defendant's offense level would be calculated at Level 34. Taking into account the two point reduction already granted by

the court along with the one point reduction which the court now grants to defendant, defendant's offense level would be further reduced to Level 31.

The government, however, maintains that U.S.S.G. Amendment 506 is invalid and not binding on this court because it is inconsistent with the Congressional mandate embodied in 28 U.S.C. § 994(h), which directs the Commission to sentence career offenders "at or near the maximum penalty authorized." *Id.* In response, defendant argues that U.S.S.G. Amendment 506 represents a reasonable interpretation of § 994(h) by the Commission, and that as such, the Commission's implementation of U.S.S.G. Amendment 506 is entitled to substantial deference by this court.

The validity of U.S.S.G. Amendment 506 presents a twofold inquiry. The court must first interpret the meaning of the phrase "maximum term authorized" in 28 U.S.C. § 994(h) to determine whether Amendment 506 properly interprets the Congressional sentencing mandate. If Amendment 506 mirrors the Congressional sentencing mandate, then the first step is the last. However, even if Amendment 506 deviates from the Congressional sentencing mandate in terms of its interpretation of the phrase, the court must still determine whether U.S.S.G. Amendment 506 nevertheless satisfies Congress' mandate to sentence career offenders "at or near" that maximum. This latter question turns largely on whether rulemaking by the Commission is entitled to administrative deference under *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). These issues are addressed *seriatim.*

*1. Interpreting the Phrase "maximum term authorized" in 28 U.S.C. § 994(h)*

The D.C. Circuit has not addressed whether U.S.S.G. Amendment 506 constitutes a reasonable and valid implementation of § 994(h). In fact, the only Court of Appeals to have broached this issue is the First Circuit. In *United States v. LaBonte,* 70 F.3d.

---

1. According to the Commission, "[t]his rule avoids unwarranted double counting as well as unwarranted disparity associated with variations in the exercise of prosecutorial discretion in seeking enhanced penalties based on prior convictions." *See* Amendment 506.

1396 (1995), the First Circuit, with some reservation, held that U.S.S.G. Amendment 506 was a "reasonable implementation of the statutory mandate, 28 U.S.C. § 994(h)." *Id.* at 1400. The majority opinion, however, made clear that the case was one of first impression, and that, in their opinion, "the call [was] close." *Id.*

Judge Stahl vigorously dissented from the majority's resolution of this issue, reasoning that, in light of the plain meaning and legislative history of § 994(h), "the only plausible interpretation of the phrase ['maximum term authorized']," when applied to defendants subject to special enhancement penalty provisions, "is the enhanced maximum punishment." *Id.* at 1414 (Stahl, J., dissenting). Judge Stahl went on to observe:

> [O]nce the phrase "maximum term authorized" is correctly read as referring in these instances to the enhanced statutory maximum, I think it [is] clear that the sentencing scheme propounded by Amendment 506 does not satisfy Congress's clear command to sentence career offenders at or near that maximum.

*Id.* Accordingly, Judge Stahl concluded that U.S.S.G. Amendment 506 should be found invalid and, consequently, not binding on the court.

In the eyes of this court, Judge Stahl's dissenting opinion represents the more thoughtful approach to the resolution of this issue. Although the First Circuit majority should be commended for its creative reading of the language of § 994(h), Judge Stahl's reasoning makes abundantly clear both that the "call" is not nearly as close as the majority would like to believe, and that the phrase "maximum term authorized" in § 994(h) can be interpreted in a relatively straight-forward fashion. A close reading of § 994(h) and a review of the legislative history demonstrates that the phrase "maximum term authorized" can only be plausibly read in this context to mean the statutory maximum. When the maximum term of imprisonment authorized by statute is enhanced by statute based on a defendant's criminal history, the "maximum term authorized" is the enhanced statutory maximum. U.S.S.G. Amendment 506 fails to satisfy the Congressional di-rective in § 994(h) because, by disregarding penalty enhancement provisions in the offense level calculus, the recommended guidelines ranges are based on some term of imprisonment less than the "maximum term authorized."

Defendant disputes this reading of § 994(h) and argues that the phrase "maximum term authorized" refers to the maximum term under the guidelines for a category of offenders and not the maximum sentence authorized by statute. Defendant, however, cites no authority for this proposition. Rather, defendant discusses cases interpreting somewhat similar language in other contexts, and argues that a similar construction should be adopted with respect to the language of § 994(h) in this case. *See* Def's Reply, at 2 (citing *United States v. R.L.C.*, 503 U.S. 291, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992) (interpreting language in a statute dealing with juveniles) and *United States v. Granderson*, ─── U.S. ───, ───, 114 S.Ct. 1259, 1261, 127 L.Ed.2d 611 (1994) (interpreting language in a statute dealing with probation revocation).

Defendant's construction of this language in § 994(h), however, must be rejected so as to not render meaningless criminal enhancement provisions both enacted by Congress and referred to in the text of § 994(h) itself. Congress enacted statutes such as 21 U.S.C. § 841 so as to provide enhanced penalties for defendants who are repeat offenders or whose offenses resulted in death or serious bodily injury. Furthermore, Congress specifically refers to these sorts of statutes in the text of § 994(h). Defendant's reading of § 994(h) completely disregards these statutory enhancement provisions in that his approach would require all defendants to be sentenced at or near the unenhanced maximum, *regardless of whether the statutory enhancement provisions applied.* It is absurd to think that Congress intended § 994(h) to be read to disregard carefully erected statutory provisions referenced in § 994(h). As Judge Stahl remarked, "a plausible reading of the statute would not render meaningless complete sections of other statutes to which it refers." *LaBonte*, 70 F.3d at 1415 (Stahl, J., dissenting). Thus, the phrase

"maximum term authorized" can only be read in this context to mean the enhanced statutory maximum.

This reading is supported by the D.C. Circuit's reasoning in *United States v. Garrett,* 959 F.2d 1005 (D.C.Cir.1992). In *Garrett,* the D.C. Circuit interpreted the guideline phrase "offense statutory maximum," a phrase which the Commission intended to be the equivalent of the statutory language "maximum term authorized." *See* U.S.S.G. § 4B1.1, comment. (n. 2.) (Nov.1993). The Court rejected the argument that the guideline phrase "offense statutory maximum" refers to the unenhanced statutory maximum. *Id.* at 1010–11. The Court explained that such a reading would "thwart congressional intent." *Id.* at 1011. According to the Court, it would be senseless to concluded that "Congress ... intended to erase the statutory distinctions among offenders based either on their past actions or on the circumstances of the offense...." *Id.* at 1011. Because the guideline phrase "offense statutory maximum" was thought to be equivalent to the phrase "maximum term authorized," this analysis applies with equal force in this case.

The legislative history of § 994(h) also suggests that Congress intended the phrase "maximum term authorized" to refer to the enhanced maximum penalty when such provisions were applicable. The Senate Committee enacted § 994(h) to replace the existing sentencing provisions for "dangerous special offenders," 18 U.S.C. § 3575 (repealed 1984), and "dangerous special drug offenders," 21 U.S.C. § 849 (repealed 1994). *See* S.Rep. No. 225, 98th Cong.2d Sess. 120 (1984), *reprinted in* 1984 U.S.C.C.A.N. at 3182, 3303. The purpose of these two provisions was to enable courts to sentence dangerous defendants to terms of imprisonment "longer than that which would ordinarily be provided." S.Rep. No. 225 at 117, 1984 U.S.C.C.A.N. at 3300. The Senate Committee believed that imprisonment "longer than the maximum provided in the statute defining the [underlying] felony" was necessary for "the protection of the public." *Id.* The purpose of these special offender statutes was clear: to provide, in appropriate circumstances, enhanced punishment beyond that otherwise

provided by the underlying statute. *See, e.g., United States v. Sutton,* 415 F.Supp. 1323, 1324 (D.D.C.1976). Congress intended § 994(h) to address these "same considerations." S.Rep. No. 225 at 120, 1984 U.S.C.C.A.N. at 3303. Thus, it is reasonable to conclude that Congress intended "maximum term authorized" to mean the statutory maximum *or the enhanced statutory maximum,* if the statutory enhancement provisions were applicable.

*2. Chevron Deference to Commission's Implementation of U.S.S.G. Amendment 506*

Although this court has determined that the phrase "maximum term authorized" means, in certain instances, the enhanced statutory maximum, the court must still determine whether U.S.S.G. Amendment 506 satisfies Congress' mandate to sentence career offenders "at or near" that maximum. Defendant contends that, even if § 994(h) refers to the enhanced statutory maximum, the language "at or near" is "a relative term" and that the Commission's interpretation of that provision is entitled to substantial deference under *Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The government, however, argues that U.S.S.G. Amendment 506 is invalid as a matter of law because it is inconsistent with the plain language of 28 U.S.C. § 994(h). According to the government, the court is not obliged to defer to the Commission's reading of § 994(h) as reflected in U.S.S.G. Amendment 506. Rather, it is precisely this inconsistency with the plain meaning of § 994(h) that renders U.S.S.G. Amendment 506 invalid and unenforceable by the court.

■ As an initial matter, it is clear that the Commission's implementation of U.S.S.G. Amendment 506 does not deserve the sort of deference contemplated in *Chevron.* The Supreme Court stated at the outset of its opinion in *Chevron* that "[i]f the intent of Congress is clear, that is the end of the matter." *Chevron,* 467 U.S. at 842, 104 S.Ct. at 2781. The Court, elaborating on this point, noted that agency interpretation is provided deference only if the enabling statute is "silent or

ambiguous with respect to the specific issue." *Id.* at 843, 104 S.Ct. at 2782. In this case, the Congressional mandate that career offenders receive sentences "at or near" the statutory maximum is neither unclear nor ambiguous. Although Congress could have been more explicit in terms of limiting the Commission's discretion, the phrase "at or near" can be read in the plain and ordinary sense. "Common definitions of the term 'near' specify that an object (or limit) is 'near' another if it is 'not a far distan[ce] from' or 'close to' the other object (or limit)." *La-Bonte*, 70 F.3d at 1418 (Stahl, J., dissenting) (citing Webster's Third International Dictionary (1986) and The American Heritage Dictionary (2d College Ed.1985)). Thus, contrary to defendant's contention, the plain meaning of Congress' directive that career offenders be sentenced "at or near" the maximum is readily ascertainable.

Given the fairly unambiguous and narrow ordinary meaning of the phrase "at or near," it is also quite obvious that U.S.S.G. Amendment 506 fails to satisfy Congress' "at or near" directive. As Judge Stahl explained:

> [U]nder Amendment 506, a defendant who qualifies as a Career Offender and whose punishment has been enhanced pursuant to 21 U.S.C. § 841(b)(1)(C) to a maximum possible term of thirty years is assigned a base sentencing range of only 210—262 months. Such a range is but 58.3 to 72.78 percent of the maximum possible term of thirty years (360 months).

*Id.* at 1418. There can be no doubt that, despite some ambiguity in the term "near" at the margins, such a sentencing scheme does not satisfy the Congressional mandate that career offenders be sentenced "at or near" the maximum term authorized. In the realm of percentages, 72.8 percent—let alone 58.3 percent—would not ordinarily be considered at or near 100 percent.

This is not to say that § 994(h) should be read to prohibit any change in the guidelines that has the effect of reducing the sentence that can be meted out to a particular offender. If this were true, even downward adjustments for acceptance of responsibility would come under scrutiny. The point is simply that the Commission should not be permitted to run roughshod over the clear intention of Congress to impose sentences close to the statutory maximum on the most dangerous, recidivist criminals. *See Sanchez–Lopez*, 879 F.2d at 559. In carrying out the Congressional mandate, in whatever fashion it seeks to do so, the Commission cannot avoid its basic responsibilities which are articulated in § 994(h).

In short, the court must reject defendant's argument that the Commission's implementation of U.S.S.G. Amendment 506 is entitled to substantial deference under *Chevron*. The phrase "at or near" is a clear and fairly unambiguous statement of Congress' intent to limit the Commission's discretion in the course of establishing guideline ranges for career offenders. The sentencing scheme contemplated by U.S.S.G. Amendment 506 does not comport with the plain and ordinary meaning of the phrase "at or near." Because U.S.S.G. Amendment 506 is inconsistent with the Congressional mandate embodied in § 994(h), and because the Commission's interpretation of § 994(h) is not entitled to substantial deference, the court must find U.S.S.G. Amendment 506 invalid and unenforceable as a matter of law. Accordingly, defendant's motion requesting downwards resentence and revision of offense level computation based on U.S.S.G. Amendment 506 shall be denied.

## C. Request for Downward Departure Under U.S.S.G. § 5K2.0

▮ Defendant also moves this court to depart downward based on defendant's conduct during the past four years of his incarceration. U.S.S.G. § 5K2.0, which implements 18 U.S.C. § 3553(b), authorizes a court to impose a sentence outside the guideline range if the court finds "that there exists an aggravating or mitigating circumstance ... not adequately taken into consideration by the [Commission]" when it formulated the sentencing guideline. 18 U.S.C. § 3553(b). Although defendant's progress in his correctional facility demonstrates a worthy desire on his part to become a productive citizen of this country, the nation's federal prisons have not deteriorated to the extent that early indications of inmate rehabilitation represent

the extraordinary or atypical case. Downward departures predicated on U.S.S.G. § 5K2.0 are exceedingly rare precisely because such departures are reserved for truly extraordinary cases. This case simply does not present an extraordinary characteristic or set of distinguishing circumstances sufficient to warrant a sentence different than the sentence called for in the guidelines. Accordingly, defendant's request for downward departure under U.S.S.G. § 5K2.0 shall be denied.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1. Defendant's request for a third point reduction pursuant to U.S.S.G. § 3E1.1(b)(2) is GRANTED;

2. Defendant's Request for Downwards Resentence and Revision of Offense Level Computation pursuant to U.S.S.G. Amendment 506 is DENIED; and

3. Defendant's request for downward departure under U.S.S.G. § 5K2.0 is DENIED.

Accordingly, defendant shall be re-sentenced utilizing Total Offense Level 34.

SO ORDERED.