**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**E. HERNANDEZ, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Sylvester BRITT, Defendant–Appellant.**

Nos. 95–1143, 95–1212.

United States Court of Appeals,
Seventh Circuit.

Argued May 15, 1995.

Decided March 18, 1996.

Jordan Loeb (argued), Madison, WI; Phillip J. Kavanaugh and Andrea L. Smith (argued), Office of the Federal Public Defender, East St. Louis, IL, for Defendants–Appellants.

James Porter, Office of the United States Attorney, Criminal Division, Fairview Heights, IL and John W. Vaudreuil (argued), Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Before CUMMINGS, BAUER, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

These consolidated appeals present a question of first impression in this circuit. Congress has directed the Sentencing Commission to assure that the Sentencing Guidelines specify a sentence of imprisonment "at or near the maximum term authorized" for an adult defendant convicted of a violent crime or felony drug offense and who has at least two prior such convictions. 28 U.S.C. § 994(h). The question is whether by "maximum term authorized" Congress meant the maximum term available for the offense of conviction, excluding any statutory sentencing enhancements based on the defendant's prior convictions, or instead the maximum term available once such enhancements are taken into consideration. In commentary that took effect late in 1994, the Commission indicated that the maximum term should be calculated based on the offense of conviction alone, without taking into account enhancements based on the defendant's criminal history. United States Sentencing Commission, Guidelines Manual, § 4B1.1 comment. (n.2) (Nov.1995); U.S.S.G.App. C, Amendment 506 (Nov. 1, 1994). Based on the plain language of the statute, we find the commentary to be inconsistent with congressional intent.**

## I.

### A. E. Hernandez

E. Hernandez[1] pled guilty on August 11, 1989, to an indictment charging him with conspiring to possess cocaine with the intent to distribute, in violation of 21 U.S.C. § 846. Prior to the plea, in conformity with 21 U.S.C. § 851(a)(1), the government filed a notice of its intent to seek the enhanced penalty applicable to repeat drug offenders set forth in § 841(b)(1)(B), based on Hernandez's 1985 conviction for the possession of marijuana with the intent to deliver.

The Presentence Report (PSR) revealed a criminal history that included not only the conviction referenced in the section 851(a) notice, but a 1986 conviction for armed robbery. Hernandez thus had a prior conviction for a crime of violence as well as a felony drug conviction, bringing into play the career offender provision of the Sentencing Guidelines, § 4B1.1.[2] That guideline specifies an

---

** Because our decision today conflicts with that of the First Circuit in *United States v. LaBonte,* 70 F.3d 1396 (1st Cir.1995), and thus creates a split of authority among the circuits, the opinion has been circulated among all judges of this court in regular active service pursuant to Circuit Rule 40(e). A majority did not favor rehearing en banc. Judges Easterbrook and Ripple did favor rehearing.

1. By order of June 19, 1995, this court granted Hernandez's request that our published opinion refer to him using his first initial in lieu of his full first name.

2. In full, the Guideline provides as follows:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career offender's criminal history category in every case shall be Category VI.

offense level based on the "offense statutory maximum," defined conclusorily prior to the amendment we consider in this appeal as "the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or a controlled substance offense." § 4B1.1, comment. (n.2) (Nov. 1989); U.S.S.G.App. C, Amendment 267 (Nov. 1, 1989). Section 841(b)(1)(B)(ii) provides for a five to forty year term of imprisonment for anyone who conspires to distribute in excess of 500 grams of cocaine; but the range increases to ten years to life for anyone who does so having previously been convicted of a felony drug offense. In choosing the appropriate offense level for Hernandez under the career offender guideline, the probation officer referred to the enhanced maximum (life imprisonment). This resulted in an offense level of 37 and a corresponding sentencing range of 360 months to life.[3] Hernandez objected to the probation officer's methodology, arguing that the maximum term authorized for purposes of Guidelines section 4B1.1 should be determined without reference to any enhancement triggered by his prior convictions (in particular the one referenced in the government's section 851(a) notice). Here, that would have been forty years. Had the probation officer used that maximum, the resulting offense level under section 4B1.1 would have been 34, with a corresponding sentencing range of 262 to 327 months. Judge Shabaz overruled Hernandez's objection, however, and adopted the offense level of 37 specified in the PSR.

In recognition of Hernandez's cooperation and assistance, the government filed a motion requesting a downward departure from the sentencing range pursuant to Guidelines § 5K1.1. Judge Shabaz denied the motion but, in acknowledgement of Hernandez's co-

operation, sentenced Hernandez at the bottom of the sentencing range, 360 months. Subsequently, the government filed a sealed motion asking the court to reduce Hernandez's sentence pursuant to Fed.R.Crim.P. 35(b). Judge Shabaz granted a reduction of five years in October 1990 after a closed hearing.

Four years later, in November 1994, Amendment 506 to the Guidelines took effect. That amendment, which we discuss in greater detail below, deemed the "offense statutory maximum" for purposes of section 4B1.1 to be the maximum statutory term authorized by the offense of conviction, without reference to any statutory enhancements based on prior offenses. Because the Sentencing Commission elected to give the amendment retroactive effect, defendants for whom application of the amendment would result in a lower sentencing range are authorized pursuant to 18 U.S.C. § 3582(c)(2) to seek a reduction in their sentences. Guidelines Manual § 1B1.10 (Nov.1995); *see United States v. Jones,* 55 F.3d 289, 296 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 161, 133 L.Ed.2d 104 (1995).

On December 5, 1994, Hernandez moved pro se to modify his sentence based on the amendment. (Hernandez hoped that the district court would reduce his offense level to 34, re-sentence him at the bottom of the corresponding sentencing range of 262–327 months, and decrease that sentence further by means of the five-year reduction granted previously to a sentence of 202 months.) Judge Shabaz denied the motion, concluding that the Commission's amendment was not binding. To calculate the maximum term authorized for purposes of the career offender enhancement without taking into account increases in the statutory maximum occasioned by the defendant's prior convictions

|  Offense Statutory Maximum | Offense Level*. |
| --- | --- |
| (A) Life | 37 |
| (B) 25 years or more | 34 |
| (C) 20 years or more, but less than 25 years | 32 |
| (D) 15 years or more, but less than 20 years . | 29 |
| (E) 10 years or more, but less than 15 years | 24 |
| (F) 5 years or more, but less than 10 years | 17 |
| (G) More than 1 year, but less than 5 years | 12. |

\* If an adjustment from § 3E1.1 (Acceptance of Responsibility) applies, decrease the offense level

by the number of levels corresponding to that adjustment.

3. Although Hernandez had pleaded guilty, the offense level was not reduced for acceptance of responsibility due to his status as a career offender. Shortly after he was sentenced, the Career Offender Guideline was modified to provide for a decrease in the offense level to reflect a defendant's acceptance of responsibility. *See* U.S.S.G.App. C, Amendment 266 (Nov. 1, 1989).

"would be significantly less than the statutory maximum which would frustrate the intent of 28 U.S.C. § 994(h)," he reasoned. *United States v. Hernandez,* No. 89 CR 67, Mem. Op. and Order at 4 (W.D.Wis. Jan. 5, 1995).

### B. Sylvester Britt

On October 6, 1994, Sylvester Britt was arrested in East St. Louis, Illinois in possession of a small quantity of heroin and a .32 caliber revolver. He waived indictment and pled guilty to a two-count information charging him with possessing heroin with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Pursuant to 21 U.S.C. § 851(a), a separate information alleged that Britt had previously been convicted of two felony drug offenses. That boosted the maximum statutory term of authorized imprisonment from twenty to thirty years. § 841(b)(1)(C).

Britt's criminal history of course triggered the career offender provision of the Guidelines. However, in light of Amendment 506, the probation officer in calculating the "maximum term authorized" for purposes of section 4B1.1 disregarded the boost in the statutorily authorized term of imprisonment and initially set the offense level at 32. With a three-level decrease for acceptance of responsibility reducing the offense level to 29, the resulting sentencing range proposed in the PSR was 151 to 188 months.

The government objected to the PSR, arguing that application of Amendment 506 would thwart congressional intent that career offenders be sentenced close to the maximum term authorized for the offense of conviction once prior convictions were taken into account, an intent acknowledged in court decisions pre-dating the Commission's amendment. Judge Beatty agreed, concluding that the Commission apparently had chosen to "fly in the face" of these decisions by interpreting the statute differently. *United States v. Britt,* No. 94–30099, Sentencing Tr. at 13 (C.D.Ill. Jan. 17, 1995). Judge Beatty thus deemed the amendment inapplicable to cases in which the government had chosen to invoke the enhanced penalties provided for in section 841. *Id.* at 14. He accordingly recalculated the offense level under section 4B1.1, referencing the enhanced statutory maximum of thirty years applicable in view of Britt's prior drug convictions. The recalculation resulted in a two-level increase in the adjusted offense level, to 31, with a corresponding sentencing range of 188 to 235 months. Judge Beatty then sentenced Britt, who was just shy of sixty-four years old, to the minimum term of 188 months.

### II.

The question these appeals pose is whether the Sentencing Commission's recently adopted commentary defining the "offense statutory maximum" for purposes of the career offender enhancement is consistent with the terms of 28 U.S.C. § 994(h). Both district courts below concluded that it is not. As this involves a question of law, our review is de novo. *See United States v. Neal,* 46 F.3d 1405, 1407 (7th Cir.1995) (en banc), aff'd, —— U.S. ——, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996).

Section 994(h) provides:

The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and [has been convicted of a felony that is either a violent crime or a specified controlled substance offense and has at least two such prior convictions].

The Sentencing Commission implemented this directive through the career offender guideline, section 4B1.1. *See* U.S.S.G. § 4B1.1, comment. (backg'd). Consistent with the statute, the guideline deems a defendant a career offender if:

(1) [T]he defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The guideline sets forth a table of enhanced total offense levels based on the applicable

"offense statutory maximum"; it also specifies that each defendant to whom the career offender provision applies will be assigned a criminal history category of VI (the highest possible under the Guidelines). *See* n.2, supra. But, as we have noted, prior to its recent amendment to the commentary, the Sentencing Commission offered little clue as to what it understood to be the "offense statutory maximum," except to say that it "refers to the maximum term of imprisonment authorized for the offense of conviction." U.S.S.G. § 4B1.1, comment. (n.2) (Nov.1989). This circular statement thus shed no light on whether, from the Commission's perspective, statutory enhancements based on prior criminal history should be included in the calculation of the maximum term of imprisonment authorized.

Amendment 506 clarified the Sentencing Commission's position. The commentary, as amended, now states:

> "Offense Statutory Maximum," for the purposes of this guideline, refers to the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense, *not including* any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record (such sentencing enhancements are contained, for example, in 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), (b)(1)(C), and (b)(1)(D)). For example, where the statutory maximum term of imprisonment under 21 U.S.C. § 841(b)(1)(C) is increased from twenty years to thirty years because the defendant has one or more qualifying prior drug convictions, the "Offense Statutory Maximum" for the purposes of this guideline is twenty years and not thirty years. If more than one count of conviction is of a crime of violence or controlled substance offense, use the maximum authorized term of imprisonment for the count that authorizes the greatest maximum term of imprisonment.

U.S.S.G. § 4B1.1 comment. (n.2) (emphasis supplied). As noted, the Commission gave the amendment retroactive effect. U.S.S.G.App. C, Amendment 504 (Nov. 1, 1994).

The Commission explained the amendment as a means to "avoid[ ] unwarranted double-counting as well as unwarranted disparity associated with variations in the exercise of prosecutorial discretion in seeking enhanced penalties based on prior convictions." U.S.S.G.App. C, Amend. 506 (Nov. 1, 1994). The notion that there is double-counting involved in using the enhanced statutory maximum stems from the fact that the defendant's prior convictions both trigger the applicability of the Career Offender Guideline and trigger the enhanced statutory maximum that is referenced under that guideline to choose the appropriate adjusted offense level. The "disparity associated with variations in the exercise of prosecutorial discretion" refers to the government's ability, in practice, to control whether or not the enhanced statutory maximums will be invoked as to a particular defendant. Although statutory provisions like section 841 unequivocally specify enhancements in the maximum term of incarceration if the defendant has previously been convicted of a felony drug offense or violent crime (see subsections (b)(1)(B), (b)(1)(C), and (b)(1)(D)), as a practical matter the government retains the discretion to decide whether the increased maximum will apply or not. Section 851(a)(1) requires as a prerequisite to an increase in the statutory sentencing range that the prosecution file in advance of the trial or the defendant's guilty plea an information notifying the defendant that it will rely on the defendant's prior convictions, which must be identified, to seek the enhanced penalty. If the government either fails or chooses not to file such an information, the lower sentencing range will be applied even if the defendant has prior convictions rendering him eligible for the statutory enhancement. Thus, even if a defendant is later deemed eligible for the Career Offender enhancement,[4] it is the unenhanced maxi-

---

4. Although a section 851(a)(1) notice must be filed in order to bring enhanced statutory penalties into play, no such notice need be filed in order to bring the Career Offender Guideline into play. Thus, an individual with prior convictions for a felony drug offense may escape the higher

mum that will be referenced under the guideline as the "Offense Statutory Maximum." That defendant consequently will be assigned a lower offense level and face a significantly lower sentencing range than a similarly situated defendant who, by virtue of a section 851(a)(1) information, is eligible for the enhanced statutory maximum.[5]

The amended commentary thus makes clear that, from the Commission's perspective, statutory enhancements stemming from the defendant's prior criminal record are not to be considered in determining what the guideline refers to as the "offense statutory maximum." If that represents a valid application of Section 994(h)'s directive, then it is clear that both Hernandez and Britt are entitled to resentencing, as their criminal records and the resulting statutory enhancements were taken into account in calculating the maximum term authorized for purposes of the career offender enhancement. Indeed, the example given in the amended commentary, indicating that the boost in the maximum from twenty to thirty years under 21 U.S.C. § 841(b)(1)(C) should be ignored for purposes of the guideline, fits Britt's circumstance precisely. However, as we explain below, we find the amended commentary to be inconsistent with the provisions of section 994(h).

■ "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States,* 508 U.S. 36, 37–39, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993). There is no contention here that the amended commentary is inconsistent with the guideline itself; we need not, therefore, address that question. In any event, the particular guideline term that the amendment defines—"offense statutory max-

imum"—is in essence a proxy for section 994(h)'s reference to the "maximum term authorized." Thus, although nominally the commentary interprets the guideline, in effect it construes the statute. We must therefore focus our inquiry on whether the commentary is consistent with section 994(h). In particular, we consider whether the amended commentary is consistent with the directive of Congress to specify sentences "at or near the maximum term authorized" for adult defendants who commit crimes of violence or drug offenses after having been previously convicted of at least two such offenses.

It is not yet settled what deference, if any, we owe the Sentencing Commission in making this assessment. The First Circuit, finding section 994(h) to be ambiguous, recently concluded that the Commission's interpretation of the statute is entitled to deference. *United States v. LaBonte,* 70 F.3d 1396 (1st Cir.1995). It arrived at that conclusion employing the familiar two-step inquiry of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), which traditionally has been applied in reviewing the construction that a federal agency has placed on the statute it is charged with administering. *See* 70 F.3d at 1403–04. *Chevron* asks first whether Congress has directly spoken to a particular issue; if it has—if the meaning of a statute is clear on its face, in other words—then there is no room left for agency interpretation. If, however, Congress has not directly spoken to the question—if the statute is silent or ambiguous—then the agency's position will be upheld so long as it is based on a permissible reading of the statute. 467 U.S. at 842–43, 104 S.Ct. at 2781–82. Thus, when the First Circuit concluded that section 994(h) was unclear, it deferred to the Commission's amended commentary as a reasonable interpretation of the statute. We too

sentencing ranges specified by section 841(b)(1) yet still be sentenced as a career offender based on those prior convictions. *See United States v. Koller,* 956 F.2d 1408, 1417 (7th Cir.1992) (collecting cases).

**5.** New background commentary adopted late in 1995 emphasizes that the Commission wishes to eliminate such disparities and to achieve greater consistency in the sentencing of defendants with

similar criminal histories. U.S.S.G.App. C, Amendment 528 (Nov. 1, 1995). The new commentary also points out that Congress drafted section 994(h) in the form of a directive to the Commission rather than an outright mandatory minimum, a circumstance that the Commission views as supporting its revision of the commentary. *Id.*

have applied the *Chevron* framework to decide whether a particular guideline comports with a statutory mandate, *see United States v. Lewis,* 896 F.2d 246, 247 (7th Cir.1990), as have other courts, *see United States v. Galloway,* 976 F.2d 414, 421 n. 5 (8th Cir.1992) (en banc) (collecting cases), *cert. denied,* 507 U.S. 974, 113 S.Ct. 1420, 122 L.Ed.2d 790 (1993).

Reliance on *Chevron* in this context, which treats the Sentencing Commission as the equivalent of an agency with unique expertise in carrying out a statutory mandate, has met with some criticism, however. *See Galloway,* 976 F.2d at 434–35 (Beam, J., dissenting); *United States v. Richards,* 67 F.3d 1531, 1542 (10th Cir.1995) (Baldock, J., dissenting). The Supreme Court, although acknowledging that the Commission's expertise "may be of potential weight and relevance" in some contexts, *Neal v. United States,* —— U.S. ——, ——, 116 S.Ct. 763, 766, 133 L.Ed.2d 709 (1996), has thus far declined to decide what deference, if any, is owed the Commission's interpretation of a statute, *id.* at ——, 116 S.Ct. at 768. Cf. *Smith v. United States,* 508 U.S. 223, 230–32, 113 S.Ct. 2050, 2055, 124 L.Ed.2d 138 (1993) (expressing doubt as to whether Sentencing Guidelines are relevant to construction of federal criminal statute); *United States v. Palacio,* 4 F.3d 150, 155 (2d Cir.1993) (same), *cert. denied,* —— U.S. ——, 114 S.Ct. 1194, 127 L.Ed.2d 543 (1994). In any event, we need not decide what weight we would give the Commission's commentary in the event we found section 994(h) to be ambiguous. Like the majority of courts that have previously considered section 994(h), we find the mandate of the statute to be plain and the Commission's amended commentary to be in contravention of it.

Although the amended commentary is new, we do not face a blank slate in considering what Congress meant by "maximum term authorized." Prior to the adoption of the amended commentary, a number of circuits, including our own, were confronted in one manner or another with the question whether statutory enhancements for prior convictions should be included in determining the maximum term to be used for purposes of section 4B1.1. Uniformly, these courts either held

or assumed that the enhancements should be taken into consideration.

In *United States v. Garrett,* 959 F.2d 1005 (D.C.Cir.1992), the Court of Appeals for the District of Columbia expressly rejected the very argument that the defendants' make here, "that the relevant maximum statutory sentence should be the maximum for a defendant with no prior drug convictions." *Id.* at 1010. In that court's view, "the maximum authorized term under a statute prescribing tiered punishments is that prescribed by the highest applicable tier." *Id.* Garrett had been convicted of a drug offense (possession of cocaine base), and his criminal history, like Hernandez's here, boosted the statutory maximum under section 841(b)(1)(B) from 40 years to life imprisonment. In the court's view, such enhancements simply could not be ignored when it came time to calculate the defendant's offense level pursuant to section 4B1.1 of the Guidelines; to do so would "thwart congressional intent":

> Subsection 841(b)(1)(B)(iii) contains different maximum terms for first offenders, for first offenders whose offense causes death or bodily injury, for repeat offenders and for repeat offenders whose offense causes death or bodily injury. To conclude that Congress, in approving the Guidelines, intended to erase the statutory distinctions among offenders based either on their past actions or on the circumstances of the offense, distinctions carefully set forth in subsection 841(b)(1)(B), would be senseless. On the contrary, under the career offender provision, Congress simply refined further the statutory sentence range so that the sentencing judge must impose a term of imprisonment nearer to the statutory maximum for a drug recidivist. The career offender provision merely narrows the trial judge's discretion in accordance with the Guidelines' overall goal of "promoting sentencing within a narrower range than was previously applied." *Mistretta v. United States,* 488 U.S. 361, 395, 109 S.Ct. 647, 666, 102 L.Ed.2d 714 (1989).

959 F.2d at 1010.

In a like vein, the Third Circuit concluded in *United States v. Amis,* 926 F.2d 328 (3d

Cir.1991), that a defendant's criminal history must be considered in identifying the statutory maximum. In that case, the defendant's criminal history boosted the statutory maximum under section 841(b)(1) to life imprisonment. The court did not doubt that the enhanced maximum was to be used in calculating his offense level as a career offender. "Whatever the 'Offense Statutory Maximum' might be for a defendant with no applicable criminal history, for Amis it was life." *Id.* at 329–30. Although the court found support for its conclusion in the pre-amendment guideline commentary, it noted that "with or without [that commentary] our conclusion would be the same." *Id.* at 330 (citing *United States v. Williams,* 892 F.2d 296, 304 & n. 13 (3d Cir.1989), *cert. denied,* 496 U.S. 939, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990)).

This court has twice been confronted with challenges to use of the enhanced statutory maximums for purposes of the career offender provision. In *United States v. Moralez,* 964 F.2d 677 (7th Cir.), *cert. denied,* 506 U.S. 903, 113 S.Ct. 293, 121 L.Ed.2d 217 (1992), the defendant had been convicted of possessing, with the intent to distribute, 29.5 pounds of marijuana. In light of the defendant's prior convictions for felony drug offenses, the statutory maximum term of incarceration was ten years; without the prior convictions the maximum would have been five years. 21 U.S.C. § 841(b)(1)(D). The applicable sentencing range under section 4B1.1 was calculated using the enhanced maximum. The defendant argued that this amounted to impermissible double counting, for his prior convictions had been used both to enhance the statutory maximum and again under the Guidelines to enhance his offense level and criminal history category. Following the Ninth Circuit's decision in *United States v. Sanchez–Lopez,* 879 F.2d 541, 558–59 (9th Cir.1989), we concluded that there had been no double enhancement of penalties. 964 F.2d at 682–83. We noted that the Sentencing Guidelines did not impose a separate statutory penalty, but merely narrowed the sentencing range within that authorized by the statute itself. *Id.* at 682 (quoting *San-*

*chez–Lopez).* In this way, the Career Offender Guideline merely honored the wish of Congress that career offenders be sentenced "at or near the maximum term authorized" by the statute. *Id.* at 683. The district court had thus acted properly by referencing the enhanced statutory maximum in determining the appropriate sentencing range under the career offender provision. *Id.;* accord *United States v. Smith,* 984 F.2d 1084, 1086–87 (10th Cir.), *cert. denied sub nom. Brown v. United States,* —— U.S. ——, 114 S.Ct. 204, 126 L.Ed.2d 161 (1993).

In *United States v. Saunders,* 973 F.2d 1354 (7th Cir.1992), *cert. denied,* 506 U.S. 1070, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993), we again upheld a career offender sentence based on the enhanced statutory maximum. There the defendant argued that his sentence violated the eighth amendment's proscription against cruel and unusual punishment, an argument that we rejected. Although we acknowledged that the thirty-year sentence imposed on Saunders was harsh (particularly as compared to the sixteen-month sentence his co-defendant received), we also found it to be precisely the sort of sentence Congress had mandated:

> By imposing a 30–year maximum penalty for individuals with a prior drug conviction, Congress made clear that it considers repeat drug violations among the gravest offenses in the federal code. Saunders' heavy punishment resulted from the instant offense, combined with two prior felony convictions and a decision not to cooperate with authorities. . . .

*Id.* at 1365.

In neither of these cases, it is true, did we consider precisely the question we confront here—did Congress, in calling for the Commission to assure sentences "at or near the maximum term authorized" for career offenders, mean the maximum statutory term as enhanced based on the defendant's prior convictions or the maximum term applicable before the defendant's criminal history is considered? Nor did we have the benefit of the Commission's amended commentary.

Yet, as is plain from our opinions in *Moralez* and *Saunders,* we not only assumed that the enhanced statutory maximum was the correct figure to be referenced under the Career Offender Guideline, but we found the longer sentences resulting from the use of the enhanced maximum to comport with congressional intent. *Moralez,* 964 F.2d at 683; *Saunders,* 973 F.2d at 1365–66; *see also Garrett,* 959 F.2d at 1010; *Amis,* 926 F.2d at 329–30; *Sanchez–Lopez,* 879 F.2d at 558–60; *United States v. Gardner,* 18 F.3d 1200, 1202 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 212, 130 L.Ed.2d 141 (1994) (assuming without comment that the enhanced statutory maximum is to be used); *Smith,* 984 F.2d at 1086 (same).

Against this backdrop, a divided panel of the First Circuit—the first appellate court to consider Amendment 506—found section 994(h)'s mandate to be ambiguous, leaving room for the position the Commission has taken in the amended commentary. *United States v. LaBonte, supra,* 70 F.3d 1396. Focusing on the central provision of section 994(h)—that the Sentencing Guidelines shall "specify a sentence to a term of imprisonment at or near the maximum term authorized for [certain] categories of defendants"—the majority identified two "conundrums": (1) the meaning of the term "maximum" vis à vis the statute's reference to "categories" of defendants; (2) just how close to the maximum the words "at or near" require a sentence to be.

In the majority's view, what constitutes the "maximum term authorized" depends on which "categories" of defendants Congress was referring to in section 994(h).

One possible reading is that "categories" are composed of those defendants charged with violations of similar statutes against whom prosecutors have filed notices of intention to seek sentence enhancements (e.g., all repeat offender drug traffickers against whom the government has filed sentence-enhancing informations under 21 U.S.C. § 851(a)(1)). On this view, the relevant statutory maximum for any such de-fendant would be the enhanced statutory maximum (ESM) applicable to repeat offenders. *See* 21 U.S.C. §§ 841(b)(1), 851(a)(1). But this reading is not linguistically compelled. The word "categories" plausibly can be defined more broadly to include all offenders (or all repeat offenders) charged with transgressing the same criminal statute, regardless of whether the prosecution chooses to invoke the sentence-enhancing mechanism against a particular defendant (e.g., all drug traffickers, or all repeat offender drug traffickers, who are charged with violating 21 U.S.C. § 841(a)(1)). On this view, the word "maximum" refers to the unenhanced statutory maximum (USM), *see* 21 U.S.C. § 841(b)(1), since this represents the highest possible sentence applicable to all defendants in the category.

70 F.3d at 1404–05 (footnote omitted).

Finding no significant clues in either the statute itself or the legislative history as to how narrowly "categories" should be defined in ascertaining what the "maximum term authorized" is, the majority turned to the Commission's interpretation of the statute. By choosing to define the "Offense Statutory Maximum" as the unenhanced statutory maximum, the Commission had comported with the second, broader definition of "categories" the majority had posited and chosen a statutory maximum that would apply to all repeat offenders regardless of whether the government had sought application of a higher statutory term to some of them. *Id.* at 1407. That choice would in turn bring about greater consistency among the sentences imposed on repeat offenders. "In the final analysis, the Commission remains fully faithful to the welter of congressional demands by choosing to treat repeat offenders as broad categories of defendants and thereby harmonizing the call for stringent punishment of recidivists with the call for consistent, non-disparate sentences." *Id.* at 1408.

The majority located a second conundrum in what it believed to be the inherently vague directive to sentence career offenders

"at or near" the maximum term authorized. No matter which statutory maximum is referenced, the majority emphasized, the resulting offense level produced by the Career Offender Guideline is only a starting point: a variety of downward adjustments may yet be made for the defendant's acceptance of responsibility and other circumstances, and the district judge retains the authority to depart downward from the sentencing range corresponding to the adjusted offense level. Thus, even if the enhanced statutory maximum were referenced under the Career Offender Guideline, these downward adjustments would make it difficult, if not impossible, for the Commission to write any rule that would guarantee sentences that literally were at or extremely close to this statutory maximum. At the same time, the possibility that upward adjustments to a given defendant's offense level might be required "suggests that room should be left for play in the joints as the Commission implements the 'at or near' language." *Id.* at 1410. Applying the amended commentary and using the unenhanced statutory maximum as the starting reference, the court noted that the recalculated sentencing ranges of the four defendants before it called for sentences representing from 61.4 percent to 109.2 percent of the unenhanced statutory maximum. "Under any suitable definition of the word 'near,' we believe that the Commission could reasonably conclude that these percentages ensure sentences sufficiently close to the USM—and sufficiently harsh—to provide a fair approximation of Congress's desire to see that career offenders, as a group, receive maximal terms of imprisonment." *Id.*

In the dissent's view, the notion that section 994(h) might be referring to the unen-

hanced maximum was simply implausible. Given that all career offenders would be sentenced using the unenhanced statutory maximum as the reference point, even if a given defendant were eligible for the enhanced maximum, the majority's construction effectively nullified the statutory enhancements. 70 F.3d at 1415 (Stahl, J., dissenting). Looking to the legislative history of section 994(h), the dissent noted that the statute was adopted as a replacement for statutory provisions that gave the courts, upon a finding of dangerousness, the authority to impose enhanced sentences—i.e., sentences greater than the maximum provided for the offense of conviction. Because section 994(h) was intended to address the "same considerations" underlying these predecessor statutes, it seemed to the dissent reasonable to assume that Congress expected the Commission to specify career offender sentences that were longer than the unenhanced statutory maximums. *Id.* at 1415–16.

The dissent was not troubled by the use of the term "categories." In the dissent's view, "categories" is an inherently imprecise term, while "maximum" is naturally specific. Thus, as between the two categories posited by the majority, it was more plausible to assume that Congress had in mind the narrower group of defendants eligible for the enhanced statutory penalties, as those penalties comported more closely with the requirement to impose the "maximum term authorized." *Id.* at 1416. In any case, the use of "categories" in section 994(h) appeared to be more of a linguistic accident than anything else. The dissent pointed out that section 994(h) was added to the Guidelines enabling legislation late in the drafting process, and the word "categories" most likely was simply borrowed from section 994(i), where the meaning of the term was more readily discerned from the structure of that subsection. *Id.* at 1416–17.[6]

---

6. Subsection (i) provides:

The Commission shall assure that the guidelines specify a sentence to a substantial term of imprisonment for categories of defendants in which the defendant:

(1) has a history of two or more prior Federal, State or local felony convictions for offenses committed on different occasions;

(2) committed the offense as part of a pattern of criminal conduct from which the defendant derived a substantial portion of the defendant's income;

(3) committed the offense in furtherance of a conspiracy with three or more persons engag-

ing in a pattern of racketeering activity in which the defendant participated in a managerial or supervisory capacity;

(4) committed a crime of violence that constitutes a felony while on release pending trial, sentence or appeal from a Federal, State or local felony for which he was ultimately convicted; or

(5) committed a felony that is set forth in section 401 or 1010 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 841 and 960), and that involved trafficking in a substantial quantity of a controlled substance.

In contrast to the majority, the dissent found "at or near" to have a fairly narrow and unambiguous meaning. "Near" means "close to" or "not a far distance from" the maximum, the dissent reasoned. *Id.* at 1418. Obviously, sentences resulting from the Commission's use of an unenhanced maximum are well shy of the enhanced maximum. *Id.* Moreover, a comparison of subsections 994(h) and (i) indicated to the dissent that Congress meant to narrowly circumscribe the Commission's authority and to compel the highest possible sentences. Subsection (i) calls for "substantial" sentences for five categories of defendants, including repeat offenders generally. *See* n.6, *supra.* Subsection (h), by contrast, applies to a narrow subset of career offenders (those committing narcotics offenses and crimes of violence) that Congress believed must be punished more stringently, and for these defendants it commanded sentences "at or near the maximum term authorized," as opposed to sentences that were merely "substantial." In this context, therefore, "at or near" has a very specific meaning. *Id.* at 1418–19.

Finally, the dissent was not persuaded that the goal of eliminating sentencing disparities justified the Commission's construction of the statute. The legislative history suggested that the disparities with which Congress was concerned stemmed not from the exercise of prosecutorial discretion but from unchecked judicial discretion and the imposition of indefinite sentences subject to parole board review. *Id.* at 1419. Moreover, to the extent that a general mission assigned to the Commission was the elimination of sentencing disparities, that broad goal must yield to the mandate of section 994(h), which is quite specific and aimed at a narrow class of defendants. *Id.* at 1420.

The First Circuit, as we have noted, is the only court of appeals thus far to have passed on the validity of Amendment 506. Among the reported district court decisions, the results are mixed. Within this circuit, in addition to Judges Shabaz and Beatty, Judge Mills has concluded that the amended commentary is inconsistent with the command of section 994(h). *United States v. Sheppard,* 879 F.Supp. 80 (C.D.Ill.1995). There the defendant had been convicted of distributing cocaine base, inter alia, and his prior history of narcotics trafficking implicated the enhanced penalties set forth in section 841(b)(1)(C). Because that subsection unambiguously specifies that such a defendant "shall be sentenced to a term of imprisonment of not more than 30 years," Judge Mills reasoned, thirty years is the maximum applicable for purposes of section 994(h); "[t]he meaning of [section 994(h) ] is clear on its face." *Id.* at 82. He agreed that the Commission's construction of the statute would thwart Congressional intent, and further noted that "there is no compelling reason that the term 'statutory maximum' should not include all maximum penalty provisions included in the statute." *Id.;* accord *United States v. Thompson,* 917 F.Supp. 22, 26–27 (D.D.C. 1996); *United States v. North,* 914 F.Supp. 533, 534–35 (S.D.Fla.1996). Judge Crabb, however, has reached the opposite conclusion and upheld the amended commentary. *United States v. Saunders,* 890 F.Supp. 764 (W.D.Wis.1995). Recounting the government's contention that "if courts cannot consider an enhanced penalty, the sentences they impose on convicted drug offenders will fall far short of the maximum sentences envisioned by Congress," (*id.* at 767–68) Judge Crabb acknowledged that the argument "has certain force," *id.* at 768. Yet, she proceeded, the government's position ignored the other mandates Congress had given the Sentencing Commission, including, among others, the goal of reducing unwarranted sentencing disparities.

> It is well within the commission's discretion to decide that unwarranted sentencing disparity could be avoided by directing judges to use the unenhanced sentence as the "offense statutory maximum" when determining the offense level for career offenders. As the commission has pointed out, sentencing enhancements are solely within the control of prosecutors. If prosecutors file the proper notice, the sentence is subject to enhancement. If they refrain from filing or withdraw a notice previously filed, the sentencing judge cannot sentence at the enhanced level, whatever considerations might argue for doing so.

\* \* \*

... Unless one reads § 994(h) as prohibiting any changes in the guidelines that have the effect of reducing the sentences that can be meted out to a drug offender, which in my view would be an unjustified construction of the statute, the commission's response is consistent with the congressional directives in § 994....

890 F.Supp. at 768. Accord *United States v. Robinson*, 906 F.Supp. 1136, 1144 (E.D.Mich. 1995).

Finally, in *United States v. Fountain*, 885 F.Supp. 185 (N.D.Ia.1995), the district court took a different tack to reach the same conclusion. Although the court assumed that the government was correct in asserting that sentences are to be set at or near the enhanced maximum, it found the "at or near" language so broad as to mean that even sentences calculated using the unenhanced maximum could be deemed "near" enough to the enhanced maximum to satisfy the dictate of section 994(h). *Id.* at 188. The amended commentary could also be read as avoiding duplicative punishment and unwarranted sentencing disparities, the court reasoned. *Id.* at 189. *Contra Thompson*, 917 F.Supp. at 27; *United States v. Benson*, 917 F.Supp. 543, 547–50 (W.D.Tenn.1995).

■ Having considered all of these opinions together with both the text and context of section 994(h), we conclude that the commentary as amended is inconsistent with the statute. In specifying incarceration "at or near the maximum term authorized," we think it clear that Congress meant the higher of the two maximums provided for in statutes like section 841. With all due respect to the Sentencing Commission and the courts that have concluded otherwise, we believe that to construe the statute as referring to the unenhanced maximum departs from the common sense of the term "maximum," rests on a strained reading of the term "categories," and relegates the enhanced penalties Congress provided for in section 841 to the dust bin.

It is worth reiterating at the outset that prior to the Commission's adoption of Amendment 506, courts consistently held or assumed that the statutory maximum to be referenced for purposes of the Career Offender Guideline was the enhanced statutory maximum. It is true, as the First Circuit has pointed out, that these cases to one extent or another relied upon the guideline itself and the accompanying pre-amendment commentary. *LaBonte*, 70 F.3d at 1401, 1405. Yet it also bears observing that virtually nothing in either the guideline or the pre-amendment commentary shed any light on which statutory maximum was to be referenced—recall that the commentary defined "Offense Statutory Maximum" as the "maximum term of imprisonment authorized for the offense of conviction," a conclusory definition that tracked fairly closely the language of section 994(h) itself. *See id.* at 1401. There was, in short, little if anything in the guideline and preamendment commentary that compelled reference to the enhanced statutory maximum. Despite the lack of guidance in the guideline as it stood pre-amendment, courts without exception looked to the enhanced, rather than the unenhanced, statutory maximum. If the mandate of the statute were as unclear as *LaBonte* posits, one would not have expected such uniformity of interpretation. Indeed, having re-examined the language of section 994(h), we are not convinced that there is any significant ambiguity in Congress' directive to the Commission to ensure sentences close to the maximum term authorized.

The word "maximum" naturally connotes the upper limit of a range, or the greatest quantity possible or permissible. Where a statute prescribes a single range of punishment, it is the upper end of that range that represents the maximum term authorized; where a statute provides two tiers of punishment, common sense suggests that the maximum falls at the upper limit of the higher of the two tiers. *Garrett*, 959 F.2d at 1010. When it enacted the guidelines enabling legislation (including section 994(h)) in 1984, Congress was certainly not oblivious to the fact that some statutes, including section 841, provide for two tiers of punishment. Congress cited section 841 in the very text of

section 994(h), and although the enhanced penalties provided for in section 841 have been modified since 1984, the tiered penalty structure of that particular statute dates back to 1970. *See* 21 U.S.C. § 841(b)(1)(A)–(B) (1970 ed.); *see also* n.11, *infra.* Congress therefore was aware that when a career offender was convicted under section 841, the Commission would be confronted with both enhanced and unenhanced penalties in choosing the "maximum term authorized."

Setting aside for a moment the term "categories" and the fact that prosecutors as a pragmatic matter enjoy discretion to determine whether to invoke the statutory enhancements, it would therefore seem that in any given defendant's case, the maximum term of incarceration authorized is the maximum term that might be applied to that defendant. If the defendant qualifies for an enhanced maximum based on her prior criminal history, it is that maximum that would constitute the maximum term authorized.

A key point of departure for the First Circuit, of course, was the statute's subsequent reference to "categories of defendants." "Categories" is a rather generic term, and we are tempted to say that it has little or no particular meaning within the four corners of section 994(h). Indeed, it could have been omitted from the statute altogether and the statute would suffer from no apparent gaps in syntax or in logic.[7] On the other hand, we recognize the time-honored rule that we are to avoid, if possible, a construction of a statute that renders any term surplusage. *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon,* —— U.S. ——, ——, 115 S.Ct. 2407, 2413, 132 L.Ed.2d 597 (1995); *Ratzlaf v. United States,* —— U.S. ——, ——, 114 S.Ct. 655, 659, 126 L.Ed.2d 615 (1994). We thus turn to the statute and attempt to glean the meaning of "categories" from the surrounding text. *See NBD Bank, N.A. v. Bennett,* 67 F.3d 629, 631 (7th Cir.1995); *Sundstrand Corp. v. Commissioner of Internal Revenue,* 17 F.3d 965,

967 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 83, 130 L.Ed.2d 36 (1994). That examination suggests to us that the meaning of "categories" derives from the types of convictions that bring defendants within the purview of the statute. The maximum term mandate of section 994 applies to two principal groups of defendants: (1) those convicted of a crime of violence, with two or more prior felony convictions for a crime of violence or a narcotics felony; and (2) those convicted of a narcotics offense, with two or more prior felony convictions for a crime of violence or a narcotics offense. These would seem to be the "categories" to which Congress was referring. This reading would in turn be consistent with the structure of section 994(i), which commands a "substantial" term of imprisonment for five "categories of defendants" defined by the circumstances of the offense of conviction and/or the defendant's prior criminal history. *See* n.6, *supra.* The term may, in fact, have been borrowed from subsection (i), as Judge Stahl suggests. 70 F.3d at 1416. In any case, nothing on the face of section 994(h) reveals "categories" to be a term either of critical significance or of opaque ambiguity.

Indeed, for the majority in *LaBonte,* "categories" took on significance only in view of the discretion prosecutors enjoy in deciding whether or not to invoke the enhanced penalties called for in section 841. That discretion resulted in the conundrum of two possible categories of defendants within the purview of section 994(h): all career offenders convicted under section 841, irrespective of whether or not the prosecution chose to seek the statutory enhancement, or only those as to whom the government filed the requisite information triggering the enhancement. But we are unpersuaded that prosecutorial discretion in the application of enhanced statutory penalties is sufficient to create an ambiguity as to what Congress may have intended "categories" to signify.

---

**7.** With the omission, the statute might read as follows:

> The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for a defendant who is eighteen years old or older and [has been convicted of a violent crime or felony drug offense and has at least two such prior convictions].

Whatever discretion section 851(a)(1)'s notice requirement may bestow upon the government as a practical matter, the language of section 841 makes clear that Congress thought of the enhancements as mandatory rather than optional. *See, e.g.,* § 841(b)(1)(B) ("If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person *shall* be sentenced to a term of imprisonment which *may not* be less than 10 years and not more than life imprisonment ....") (emphasis supplied). There is no language in this statute alluding to the enhancement as a discretionary call on the part of the government. Indeed, for that matter, there is no such language to be found in section 851 either. Instead, section 851(a)(1) states that a defendant shall not be subject to a sentence enhancement based on one or more prior convictions unless the government files an information identifying those convictions in advance of the trial or guilty plea. On its face, this requirement appears to be a process-oriented command for the defendant's benefit rather than an overt grant of discretion to prosecutors. The balance of the statute confirms that understanding: provision is made for the defendant to affirm or deny the previous convictions and for a hearing to resolve any disputes over the fact and validity of those convictions. § 851(b), (c). *See United States v. Bell,* 345 F.2d 354, 356 (7th Cir.), *cert. denied,* 382 U.S. 882, 86 S.Ct. 175, 15 L.Ed.2d 123 (1965).[8]

Thus, although Congress conditioned the application of the sentencing enhancements on the government's satisfaction of certain burdens, the unqualified language of section 841 suggests that Congress expected the government to undertake these burdens and seek the enhancements whenever the defendant's eligibility is clear. It is therefore unlikely that when Congress in section 994(h) spoke of "categories of defendants," it was referring to a universe of defendants who meet the criteria of the statute but who fall into two subsets: those for whom the government sought the enhanced statutory penalties and those for whom it did not. The more natural reading of the term "categories of defendants," and the one consistent with the mandatory language of section 841 vis à vis the enhancements, is all repeat offenders whose instant convictions fall into either of the two categories listed in section 994 and for whom the government has filed the requisite notice. See *supra* at 596. The "maximum term authorized" for that category of defendants is obviously the enhanced maximum, as the First Circuit agrees, 70 F.3d at 1405; and so understood it is clear that the Commission's use of the unenhanced maximum *is improper.*

Parsing the language of section 994(h) also demands that we give some attention to the fact that Congress has called for sentences at or near the "maximum term *authorized.*" "Authorized" in this context is a prospective term that focuses on possibilities rather than outcomes. For defendants who violate section 841 and who have prior felony drug convictions, the maximum term authorized is the enhanced maximum. In a given case, the government may choose to forgo the enhancement and, by opting not to comply with the notice requirements of section 851(a)(1), preclude application of the higher penalties. But a decision of that type in an individual case does not undo the fact that the enhanced penalties remain *authorized* for other repeat offenders convicted under section 841.

Ultimately, perhaps the most compelling indication that the Commission's interpretation is inconsistent with congressional intent lies in the fact that it virtually nullifies the enhancements called for by section 841. If one uses the unenhanced statutory maximum as the term of incarceration to be referenced for all defendants under the Career Offender Guideline, nearly all sentences will fall at or below that lower maximum term. Thus, absent an extraordinary number of upward adjustments in the offense level or an outright departure from the guideline range, no defendant will be sentenced to a term at or

---

8. The notice requirement in its current form was enacted as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970. *See 21 U.S.C. § 851 (1970 ed.). However, statutory* forerunners of the provision, such as the one this court considered in *Bell,* date back to the 1940s. *See* 26 U.S.C. § 2557(b)(7) (1946 ed.); 26 U.S.C. § 7237(c)(2) (1964 ed.).

near the enhanced maximum.[9] For the vast majority of defendants eligible for the enhancements under the terms of section 841, then, the enhanced penalties are a fiction. Yet, as the Commission itself pointed out in adopting the new commentary, the enhanced penalties section 841 currently specifies for recidivist drug offenders had not yet been adopted in 1984 when Congress enacted the guidelines enabling legislation, including section 994(h). U.S.S.G.App. C, Amendment 506.[10] The statute as it stood at that time did call for enhancements (see Comprehensive Drug Abuse Prevention and Control Act of 1970, P.L. 91–513, 1970 U.S.C.C.A.N. 4566, 4570 ("Second offenses carry double the penalty for first offenses"); 21 U.S.C. § 841(b)(1)(A)–(B) (1970 ed.));[11] but subsequent amendments have increased the enhanced maximums. To accept the interpretation of section 994(h) embodied in the Commission's amendment, we would have to believe Congress acted in a pointless fashion in raising the enhanced maximums, for it is the unenhanced maximums that are to be referenced in calculating offense levels for career offenders. The increased enhancements were thus vestigial from the outset. We are loathe to attribute to Congress such pointless amendments of the statute's penalty provisions. Congress, we think, would not have continued to adjust the enhanced penalties upward if it did not believe they would apply to defendants sentenced as career offenders under the Guidelines. Consistent with section 994(h), we believe Congress expected that career offenders convicted under section 841 would be sentenced at or near these enhanced maximums.

Which brings us to the "at or near" language of section 994(h). "Near" is a relative term, and that in conjunction with the practicalities of Guideline offense level calculations leads us to agree with the First Circuit that some flexibility in the "at or near" mandate is required in order for Career Offender sentences to be calculated consistently with other sentences. The base offense level (and corresponding sentencing range) for a career offender cannot be set so close to the statutory maximum, for example, that there is insufficient room for upward adjustments to reflect an individual defendant's aggravating role in the offense, obstruction of justice, and so on. Similarly, "near" cannot be defined so restrictively as to preclude downward adjustments for a defendant's minor role in the offense, acceptance of responsibility, etc. In this sense, we agree that the Sentencing Commission, given its intimate familiarity with the structure of the Guidelines, is entitled to some leeway in determining just how

9. Of course, the enhanced maximums provided for in section 841 are triggered by only one prior conviction, whereas two prior convictions are required to trigger the provisions of section 994(h) and the Career Offender Guideline. In theory, therefore, an individual with one qualifying prior conviction would be eligible for the enhanced maximum under section 841(b) without being a career offender. However, the Sentencing Guidelines make it extremely unlikely that such an individual would ever be sentenced to such a lengthy term. For example, a person with a prior felony drug conviction who distributes 400 grams of cocaine would be eligible for a maximum term of 30 years pursuant to section 841(b)(1)(C). However, in the absence of aggravating factors, the Guidelines would assign that person an offense level of 24. U.S.S.G. § 2D1.1. Assuming that the prior conviction results in three criminal history points (U.S.S.G. § 4A1.1(a)) and that no adjustments in the offense level are made, the sentencing range would be 57 to 71 months, a term far below the enhanced maximum. If the statute provides for an enhanced minimum (e.g., § 841(b)(1)(A), (B)) and the requisite section 851(a) notice has been filed, that minimum will apply even if the specified guideline maximum is lower. U.S.S.G. § 5G1.1(b); see, e.g., *United States v. Lanterman*, 76 F.3d 158, 160–61 (7th Cir. 1996); *United States v. King*, 62 F.3d 891, 893 (7th Cir.1995). However, unless the defendant is sentenced as a career offender, the statutory maximum would not come into play.

10. Actually, the Commission stated broadly that "when the instruction to the Commission that underlies § 4B1.1 (21 U.S.C. § 994(h)) was enacted by the Congress in 1984, the enhanced maximum sentences provided for recidivist drug offenders (e.g., under 21 U.S.C. § 941) did not exist." U.S.S.G.App. C, Amendment 506. This is true insofar as the Commission was referring to the current maximums, but incorrect so far as it suggests that there were no enhanced sentences at all.

11. Indeed, the narcotics laws specified enhanced maximums for repeat offenders as early as the 1940s. *See* 26 U.S.C. § 2557(b)(5), (6) (1946 ed.); 26 U.S.C. § 7237(a) (1964 ed.); 21 U.S.C. §§ 841(b), 962 (1970 ed.).

near a career offender's base offense level and sentencing range should be to the applicable statutory maximum.

But the question presented by Amendment 506 is not how close the offense level and resulting sentencing range must be to the statutory maximum. No one is arguing here, for example, that either defendant's total offense level is either too close or not close enough to the pertinent maximum under section 841. The debate instead is over which statutory maximum the Commission is to aim for. The Commission's familiarity with what the First Circuit described as the "labyrinthine" quality of the Guidelines (70 F.3d at 1409) does not help to decide that question. And no one is seriously contending, we might add, that a career offender sentence calculated using the unenhanced statutory maximum will suffice as one "at or near" the enhanced statutory maximum. *But see Fountain, supra,* 885 F.Supp. at 188.[12]

A pragmatic reading of section 994(h) thus leads us to this conclusion: When Congress directed the Sentencing Commission to provide for sentences "at or near the maximum term authorized" for persons who qualify as career offenders, it meant the highest penalty for which a given defendant is eligible. For a person who is subject to the enhanced statutory penalties due to her prior convictions and the filing of a section 851(a) notice, that is the enhanced maximum. There is no doubt that Congress considered persons convicted of their third narcotics felony or violent crime to be among the most serious offenders-thus its command that such individuals receive not just a "substantial penalty" (28 U.S.C. § 994(i)), but the "maximum" penalty available. See generally *Saunders,* 973 F.2d at 1365. To treat the unenhanced statutory maximum as the maximum term authorized for purposes of section 994(h), even when the defendant is eligible for a higher penalty, ignores the common meaning of the word "maximum," abrogates the enhanced maximums Congress has provided for

in statutes like section 841(b), and, we are convinced, underestimates the severity of the penalties Congress had in mind for these defendants.

The Commission has advanced two policy reasons in support of its decision to adopt the unenhanced maximum: avoiding unwarranted "double counting" of the defendant's prior convictions and avoiding unwarranted disparity resulting from the government's exercise of discretion in invoking the statutory enhancements. Our conclusion that the mandate of section 994(h) is unambiguous renders the Commission's rationale beside the point. But we do not, in any event, find the Commission's reasoning persuasive.

The notion that use of the enhanced maximum amounts to double counting, as we explained earlier, stems from the fact that the defendant's prior convictions trigger both the statutory enhancement and the Career Offender Guideline. But the double counting argument is, as we have also noted, one that we squarely rejected in *Moralez,* 964 F.2d at 683. *See also United States v. Smith, supra,* 984 F.2d at 1086–87; *United States v. Amis, supra,* 926 F.2d at 329–30; *United States v. Sanchez–Lopez, supra,* 879 F.2d at 558–59. Thus, as Judge Crabb so aptly put it in *Saunders,* the double counting rationale "lacks any persuasive content in light of the unanimity of the courts of appeals in refusing to so characterize the procedure." 890 F.Supp. at 768.

Nor do we think the Commission's more general task of eliminating unwarranted disparities among similarly situated offenders supports its use of the unenhanced maximum. To the extent that prosecutorial discretion results in two subcategories of career offenders—those subject to the enhancement and those who are not, despite their eligibility—we are skeptical of the notion that Congress intended for the Commission to choose the one statutory maximum that could be applied to both subcategories. Quite a num-

---

**12.** Recall that for Hernandez, the low end of the sentencing range using the unenhanced maximum of 40 years would be 262 months, well short of the enhanced maximum of life; for Britt, the low end of the sentencing range calculated with reference to the unenhanced maximum is 151 months, a term less than half of the enhanced maximum of thirty years. *See Moralez,* 964 F.2d at 683 n. 5 (suggesting that Guideline sentence representing 83 percent of the statutory maximum "may well be short of being 'at or near the maximum term authorized.' ").

ber of predicate offenses may bring a defendant within the purview of section 994(h), and each offense is governed by its own statutory maximum. Disparities among these maximums abound. A career offender who robs a bank, for example, is subject to a maximum prison term of twenty years (18 U.S.C. § 2113(a)); whereas (ironically) one who threatens the life of the President may be imprisoned for no more than five years (18 U.S.C. § 871). In the realm of narcotics offenses, a career offender who produces, with the intent to distribute, less than fifty kilograms of marijuana is subject to a maximum term of ten years, so long as the total number of plants involved does not exceed fifty; if, however, the number of plants involved exceeds fifty (regardless of their weight), he is subject to a maximum term of thirty years. 21 U.S.C. § 841(b)(1)(C), (D). Of course, these disparities are among different offenses, or at least offenses involving different quantities of illicit substances. The disparity with which the Sentencing Commission was concerned, on the other hand, is the disparity between the sentences that two career offenders convicted of the same crime might receive, depending on whether or not the prosecution filed the requisite section 851(a) notice. Yet we have no reason to believe that the disparity in this instance is any more random than the disparity among the statutory maximums Congress has chosen for different offenses. If the government decides not to seek the enhanced statutory penalties for a particular defendant, it presumably does so in the deliberate exercise of the discretion given it by section 851(a)—perhaps in view of extenuating circumstances not otherwise apparent in the defendant's record or taken into account by the guidelines, for example.[13] In this sense, the only factor distinguishing the disparity is that it results from case-by-case assessments by the prosecutor as to the appropriate penalty rather than categorical assessments by Congress. To treat this disparity as unwarranted, and to insist on the use of one statutory maximum for all career offenders convicted under a statute providing for tiered penalties, ignores the judgment involved when the government decides whether or not to invoke the higher penalty.

As Judge Stahl has pointed out, this disparity was, in any event, one within the contemplation of Congress. 70 F.3d at 1420. Section 994(h) explicitly references section 841, which in 1984, did provide for certain enhancements in the sentencing range based on the defendant's prior criminal history. See *supra* at 598 & n. 11. Congress was thus aware that among the defendants subject to the maximum term mandate of section 994(h) were those convicted under section 841 and eligible for that statute's enhanced penalties. Indeed, as we have noted, Congress' subsequent tinkering with those enhancements makes little sense if it did not intend for the higher penalties to be used as the pertinent "maximum" for purposes of section 994(h). *Supra* at 597–598. At the same time, Congress surely understood in 1984 that these enhancements, then as now, were subject to the longstanding notice requirement of section 851(a)(1). *See* n.8, supra. The result is that Congress, if not by design then by default, gave the government the discretion to decide whether a career offender's sentence will be calculated with reference to the enhanced or the unenhanced statutory maximums in section 841. The disparities in the sentences assigned to career offenders cannot be described as mere happenstance, then, but as the foreseeable result of the discretion Congress has assigned to (and left with) prosecutors.

We recognize that a key mission of the Sentencing Commission, and one of the fundamental goals reflected in the Sentencing Guidelines, is to bring a consistency to the sentences of similarly situated offenders. 28 U.S.C. § 994(f). Yet, assuming that the construction we have placed on section 994(h) results in some inconsistency in the sentencing of career offenders by virtue of the uneven exercise of prosecutorial discretion in

---

13. In some cases, the government might not file the requisite 851(a) notice out of negligence or because it is simply unable to identify the defendant's prior convictions even within the expanded time frame that the statute permits in cases where good cause is shown. 21 U.S.C. § 851(a).

But we do not suppose that the resulting windfall to the defendant who escapes the higher statutory penalties in this situation is any reason to adopt the lower penalty in all cases, simply to avoid the disparity.

invoking the heightened penalties available under section 841, we believe that the specific and unequivocal command that career offenders be sentenced "at or near the maximum term authorized" trumps the more general concern for consistency in overall sentences. The fit between statutory sentencing mandates and the Guidelines is not always perfect. It is not out of the ordinary, for example, for the sentencing range prescribed by the Guidelines in a particular case to fall below a statutory minimum, in which case the latter applies. We view this circumstance as being no different. U.S.S.G. § 5G1.1; see, e.g., *United States v. Lanterman,* 76 F.3d 158, 160–61 (7th Cir.1996); *United States v. McCaleb,* 908 F.2d 176, 177 & n. 3, 179 (7th Cir.1990). To the extent that inconsistencies result from the government's exercise of discretion in invoking statutory enhancements, the situation is one for Congress, not the courts to remedy. *Neal v. United States, supra,* —— U.S. at ——, 116 S.Ct. at 769.

### III.

Having concluded that the Sentencing Commission's amendment to the commentary accompanying the Career Offender Guideline is incompatible with the mandate of section 994(h), we agree with the district courts below that the commentary has no application. When a statute provides for tiered penalties as section 841(b) does, and the defendant by virtue of his criminal history and the government's filing of a section 851(a) notice is eligible for an enhanced maximum term of incarceration, that enhanced maximum is the maximum to be referenced for purposes of section 994(h) and the Career Offender Guideline. In each of the cases before us, the district court used the appropriate maximum in calculating the defendant's offense level. The decision of Judge Shabaz to deny Hernandez's motion to modify his sentence based on Amendment 506, and the decision of Judge Beatty to disregard the amendment in setting Britt's offense level were both correct.

AFFIRMED.